**TAJ MAHAL ENTERPRISES, LTD., Plaintiff,**

v.

**Donald J. TRUMP, Trump Taj Mahal Associates Limited Partnership, and Trump Taj Mahal, Inc., Defendants.**

**Civ. A. No. 90–1503 (JFG).**

United States District Court, D. New Jersey.

June 4, 1990.

Robert M. Skolnik, West Long Branch, N.J., John K. Donaghy, Brandywine, Md., Robert G. McMorrow, Sughrue, Mion, Zinn, MacPeak & Seas, Washington, D.C., for plaintiff.

John J. Barry, Clapp & Eisenberg, Newark, N.J., John M. Donnelly, Clapp & Eisenberg, Atlantic City, N.J., W. Mack Webner, Baker & Hostetler, Washington, D.C., for defendants.

GERRY, Chief Judge.

Plaintiff, Taj Mahal Enterprises, Ltd., brought this action against defendants, Donald J. Trump, Trump Taj Mahal Associates Limited Partnership and Trump Taj Mahal, Inc., for service mark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Plaintiff has a registered mark for the name TAJ MAHAL, and it alleges that defendants have infringed this mark by naming their new casino and hotel in Atlantic City, New Jersey, the TRUMP TAJ MAHAL. Plaintiff has moved for a preliminary injunction to stop defendants' continued use of the term TAJ MAHAL, and a hearing on that motion was held on May 17, 1990 in this court.

## I. *Findings of Fact*

Plaintiff opened an Indian restaurant in 1965 and named it the TAJ MAHAL. This restaurant has been located at 1327 Connecticut Avenue, N.W., in Washington, D.C., for the past 25 years. It was initially owned and operated by plaintiff, but now plaintiff leases the restaurant to C & M, Inc., which currently operates it. C & M, Inc. has operated the restaurant since May 1, 1984, and C & M, Inc. is now solely responsible for the advertising and promotion of the TAJ MAHAL restaurant, as well as for hiring and managing the employees and purchasing, preparing and serving the food. C & M Inc. pays $4,500 rent plus property taxes to plaintiff each month.

Plaintiff is a corporation owned entirely by Raj Mallick and incorporated under the laws of the District of Columbia. Mr. Mallick owns other establishments, including other restaurants and hotels, in the District of Columbia, California, Pennsylvania and Virginia. There is no evidence that any of Mr. Mallick's other properties is or has been named the TAJ MAHAL. In fact, plaintiff has never done business outside of the District of Columbia. Plaintiff's sole current business is the collection of rent for the TAJ MAHAL restaurant. On June 23, 1981, the United States Patent and Trademark Office granted plaintiff registered service mark number 1,158,610 for the provision of restaurant services under the name TAJ MAHAL.

The TAJ MAHAL restaurant serves exclusively Indian cuisine, and it is located on the second floor of a two story building in a commercial section of Washington. In order to get to the restaurant, a patron must climb a flight of stairs with 25 steps. The restaurant seats approximately 74 people at a given time, and it employs six people. Its gross sales are approximately $300,000 per year or $830 per day. The TAJ MAHAL restaurant advertises by us-

ing its name on its napkins and menus, handbilling at subway stations in Washington, and purchasing space in the Yellow Pages, as well as by placing advertisements in local Indian–American and Pakistani–American newspapers and in local hotel patron guides.

At least 24 other restaurants in the United States currently are named TAJ MAHAL, including two in New Jersey and two in the metropolitan New York area. Two such TAJ MAHAL restaurants, located in Colonia, New Jersey and Seattle, Washington, have used that name for 14 years. Prior to February 1990, plaintiff never tried to stop any other restaurant from using the name TAJ MAHAL. At least 70 businesses in the United States have used the name TAJ MAHAL, and plaintiff never sought to stop any of them from using its name.

Mr. Mallick, plaintiff's owner, admits that he knew about the defendants' new establishment, the TRUMP TAJ MAHAL CASINO–RESORT, as early as September 1989. Mr. Mallick visited Atlantic City in August–October 1989 and saw the building which is now the TRUMP TAJ MAHAL. He denies seeing the name on the building. In early February 1990, defendants attempted to buy the registered TAJ MAHAL service mark from plaintiff. On February 22, 1990, plaintiff's attorney wrote defendants and requested that they cease using the name TAJ MAHAL for their new hotel and casino project.

The facility which now bears the name TRUMP TAJ MAHAL was first named the TAJ MAHAL in the Spring of 1986 before it was purchased by defendants. The previous owners, Merv Griffin and Resorts International, spent over $2 million to promote this project, and they sold the facility to defendants sometime in 1987 or 1988. Signs bearing the name TAJ MAHAL were placed on the facility during its construction, at least as early as 1988. The TRUMP TAJ MAHAL cost hundreds of millions of dollars to build, and its estimated operating costs are $1.2 million per day. Defendants opened the hotel and casino on April 2, 1990. They estimate that the prop-

erty's daily net income will at least equal the daily operational costs.

The TRUMP TAJ MAHAL is the tallest building in New Jersey at 51 stories, and it contains 4.2 million square feet of space, 1250 guest rooms, a 120,000 square foot casino, and 175,000 square feet of meeting and conference rooms. The most expensive suite, the Alexander the Great Suite, costs $10,000 per night. The TRUMP TAJ MAHAL employs over 7,000 people. Defendants spent $3.2 million advertising the project between November 1988 and April 2, 1990. The signs which currently display the name TRUMP TAJ MAHAL were placed on the building in October 1988, and they cost several thousand dollars per letter. Moreover, the name TAJ MAHAL appears on the four faces of the building, and the name TRUMP TAJ MAHAL appears literally thousands of times throughout the hotel and casino. For instance, this name is found on each of the 3,008 slot machines in the casino. The cost of the signs bearing the names TAJ MAHAL or TRUMP TAJ MAHAL is $11 million.

## II. *Conclusions of Law*

We have jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338(a) as plaintiff alleges causes of action under 15 U.S.C. §§ 1114(1) and 1125(a).

A preliminary injunction may be ordered pursuant to Fed.R.Civ.P. 65. In order to obtain a preliminary injunction, the moving party must demonstrate by sufficient evidence: (1) a reasonable likelihood of success on the merits; (2) immediate and irreparable harm by denial of the requested relief; (3) that granting preliminary relief will not result in a greater harm to the non-moving party; and (4) that granting preliminary relief will be in the public interest. *Valentine v. Beyer*, 850 F.2d 951, 955 (3d Cir.1988); *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987). To satisfy the first criterion for a preliminary injunction, the moving party need not prove his right to a judgment after trial beyond all doubt, but he has the burden to make a *prima facie* case showing a reasonable likelihood that he will prevail on the merits.

*Oburn v. Shapp,* 521 F.2d 142, 148 (3d Cir.1975).

■  Plaintiff has brought this action and the present motion for a preliminary injunction under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). Section 1114(1) prohibits the use of a registrant's mark when such use is likely to cause confusion, to cause mistake or to deceive the consuming public. 15 U.S.C. § 1114(1)(a). Section 1125(a) prohibits the knowing use of any false designation of origin. 15 U.S.C. § 1125(a). The test for infringement under either section 1114(1) or section 1125(a) is whether defendant's use of the mark is likely to cause confusion with plaintiff's mark.[1] *See Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir. 1980); *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap and Emblem Mfg., Inc.,* 510 F.2d 1004, 1013 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); *see also Holiday Inns, Inc. v. Trump,* 617 F.Supp. 1443, 1464 (D.N.J. 1985) (stating similar standard for common law service mark infringement). Although plaintiff's mark is registered and entitled to a high level of protection, plaintiff must still prove a likelihood of confusion in order to succeed on its infringement claims. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir.

1986); *see Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1395, 1403–04 (3d Cir.1985) (describing rights of registrant). Therefore, in order to obtain a preliminary injunction, plaintiff must show that it will be reasonably likely to prove a likelihood of confusion between its mark and defendants' use of the name TAJ MAHAL on the merits at trial.

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir.1978). The Third Circuit has identified ten factors which should be considered in determining whether a likelihood of confusion exists:

(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though

1. There is some question in the Third Circuit about the proper test for trademark infringement in different contexts. In some contexts, the Third Circuit indicates that the court must look to whether plaintiff's mark has developed a secondary meaning. *See Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 462 (3d Cir.1983). The secondary meaning inquiry is generally applied where the owner of the mark and the alleged infringer deal in competing goods or services, and the issue becomes whether the owner's mark is inherently distinctive or has acquired sufficient secondary meaning to make it distinctive as compared to the alleged infringer's mark. *Id.* When the owner of the mark and the alleged infringer deal in non-competing lines of goods or services, the Third Circuit indicates that the court must look to the likelihood of confusion as to the origin of the parties' respective goods or services. *Id.* The Third Circuit has stated:

"Likelihood of confusion and secondary meaning are in theory distinct concepts. In practice, however, the evidence required to show either, and the legal consequences flow-

ing from a finding of either, will be virtually indistinguishable.... Secondary meaning exists when consumers seeing a trademark assume that the product it labels came from a particular source. If in fact the product did not come from that source, then there has been buyer confusion. The test [for secondary meaning] is thus indistinguishable in practice from the more traditionally phrased likelihood of confusion test."

*Id.* In fact, the Third Circuit has adopted its test for likelihood of confusion from a case dealing with secondary meaning. *Id.* (applying ten factor test from *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3d Cir.1978)). While plaintiff and defendants in the present case deal in food services, defendants also deal in other services which plaintiff does not, like casino gambling and guest accommodations. Therefore, we will refer to the applicable standard for infringement as likelihood of confusion throughout this opinion, while we are cognizant that our inquiry may properly encompass the concept of secondary meaning in some respects.

not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

*Id.; see Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir.1983). While all of these factors may be relevant, they need not all be considered "when some are dispositive." *American Cyanamid Co. v. S.C. Johnson & Son, Inc.,* 729 F.Supp. 1018, 1021 (D.N.J.1989), *citing Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, 151–52 (3d Cir.1984). We will treat with each of the ten factors in turn.

### 1. *Similarity of Marks*

When considering the similarity of two marks, one must compare the appearance, sound and meaning of the marks as well as the manner in which they are used. *Caesars World, Inc. v. Caesar's Palace,* 490 F.Supp. 818, 824 (D.N.J.1980). In making such a comparison, the relevant factor is "the overall impression created by the mark as a whole rather than simply comparing individual features of the marks."[2] *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 975 (11th Cir.1983); *American Cyanamid Co.,* 729 F.Supp. at 1021.

Plaintiff's mark is simply TAJ MAHAL, and it is used as the name of an Indian restaurant in Washington, D.C. In contrast, defendants have named a large casino and hotel facility in Atlantic City the TRUMP TAJ MAHAL. While the prominent feature of both parties' marks is the term TAJ MAHAL, the inclusion of the

Trump name in defendants' designation is of more than slight significance. The overall impression created by the name TRUMP TAJ MAHAL is different from the impression given by the shorter and simpler name TAJ MAHAL. The addition of the name Trump in TRUMP TAJ MAHAL does not insulate defendants from plaintiff's claim here, but it does evoke certain proprietary images and impressions that are absent from the name of plaintiff's restaurant. *See Little Tavern Shops, Inc. v. Davis,* 116 F.2d 903 (4th Cir.1941). The name Trump has developed a significance unlike most other surnames, and it does more to distinguish TRUMP TAJ MAHAL from TAJ MAHAL than would the addition of some other surname. *See Holiday Inns,* 617 F.Supp. at 1469.

In comparing the two marks, we note that defendants' inclusion of the name Trump does mitigate the confusion which may arise between the parties' marks because of the distinctive characteristics of the name Trump itself. *See Kinark Corp. v. Camelot, Inc.,* 548 F.Supp. 429, 444 (D.N.J.1982) (inclusion of term CASINO does not mitigate confusion between CAMELOT HOTEL and CAMELOT HOTEL/CASINO due to generic nature of phrases such as HOTEL and CASINO). The sound of the two marks is also different. In this regard, it is relevant that the name Trump appears at the beginning of TRUMP TAJ MAHAL. Additionally, it is unclear whether the meaning of the term TAJ MAHAL is similar in plaintiff's restaurant and defendants' hotel and casino. In the context of plaintiff's restaurant, TAJ MAHAL may well simply designate the type of cuisine that is served, namely Indian. Whereas, in the defendants' facility, TAJ MAHAL may characterize a grand scale, a certain overstated opulence, and

---

**2.** "[I]t would be incorrect for purposes of comparison to break down each mark to its simplest element or characteristic, for that is not the manner in which potential purchasers shop for the respective products of plaintiff and defendant.... In the marketplace, a potential shopper is confronted by a totality of circumstances which ought to be considered in determining whether there is a likelihood that confusion,

mistake or deception will result. All relevant factors should be evaluated in their entirety as reflected by each mark and its respective product." *Johnson & Johnson v. Colgate–Palmolive Co.,* 345 F.Supp. 1216, 1222 (D.N.J.1972) (citation omitted); *see Or Da Industries, Ltd. v. Leisure Learning Products,* 479 F.Supp. 710, 716–17 (S.D.N.Y.1979).

even an appealing bombast reminiscent of the casino's Agra namesake.

We conclude that plaintiff's mark TAJ MAHAL is similar to defendants' name TRUMP TAJ MAHAL in that both employ the unmistakable term TAJ MAHAL. However, we also conclude that the two marks are dissimilar because of the sound, meaning and overall impression of TRUMP TAJ MAHAL when compared to TAJ MAHAL. In the present case, the similarity between the two names is not great enough to weigh very heavily in favor of finding a likelihood of confusion between the two marks.

### 2. Strength of Plaintiff's Mark

"The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although a possibly anonymous, source." *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). Accordingly, the strength of a mark depends on its distinctiveness and its "origin-indicating" quality. *Id.* The relative strength of any mark lies on a spectrum depending on whether the mark is generic, descriptive, suggestive or arbitrary and fanciful. *Id.; Kinark Corp.*, 548 F.Supp. at 447. A mark is entitled to greater protection the further it lies towards the arbitrary end of the spectrum and the farther it gets away from the generic end. *See McGregor–Doniger, Inc.*, 599 F.2d at 1131.

A mark is suggestive if "it requires imagination, thought and perception to reach a conclusion as to the nature of the services." *Kinark Corp.*, 548 F.Supp. at 448, *quoting Stix Products, Inc. v. United States Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). The mark TAJ MAHAL is clearly suggestive in the food service, casino or guest accommodations markets because it takes some imagination to link those services with the name of a palatial crypt located in India.

In determining the strength of a suggestive mark, it is relevant to consider whether an "impoverishment of the language" of a given market would occur if a person were permitted to preclude any one else from using one of the only terms which instantly evokes a certain image or association. *Kinark Corp.*, 548 F.Supp. at 448; *see Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903, 906 (3d Cir.1952). The term TAJ MAHAL brings to mind grandeur and opulence, and it is evocative of an exotic, Eastern flavor. While there are other terms that convey a similar impression, few engender the same images with the same panache as does the term TAJ MAHAL. Trademark protection is not intended to allow a person to procure a certain impression or association for his own exclusive use, and others must be permitted to communicate the same impression or association if they desire. *See Kinark Corp.*, 548 F.Supp. at 448–49. Therefore, a mark is relatively weak when it is suggestive and when it is one of only a few terms which communicates a particular impression. *Id.*

In addition, the widespread use of a given mark by others weakens the mark and dilutes the plaintiff's protection. *Id.* at 448 ("[E]xtensive third-party use of the [mark was] impressive evidence that there would be *no* likelihood of confusion.") (emphasis in original); *Nabisco Brands, Inc. v. Quaker Oats Co.*, 547 F.Supp. 692, 699 (D.N.J.1982). The term TAJ MAHAL has been used by numerous other restaurants and businesses in the United States over the past 25 years, and there are currently at least 24 restaurants by that name. Two of those restaurants are located in New Jersey. In this light, plaintiff's mark appears very weak as it hardly distinguishes plaintiff's establishment from any of the other TAJ MAHALs.

Due to the mark's suggestive nature, the paucity of alternative means to communicate the same impression and the fact that the use of the mark is widespread, we conclude that plaintiff's mark TAJ MAHAL is relatively weak.

### 3. Prices of the Services and Other Factors Indicative of the Care and Attention Expected of Consumers When Making a Purchase

The rationale behind this factor is that consumers will be less likely to be confused

about the origin of goods or services when it is relatively expensive. The amount of care and attention attendant to a purchase increases proportionately as the cost of the goods or services increase. *See Restaurant Lutece, Inc. v. Houbigant, Inc.,* 593 F.Supp. 588, 595 (D.N.J.1984).

In the present case, defendants' services include casino gambling, guest accommodations, food services and entertainment. It also is relevant that defendants' facility is located in Atlantic City, and many of its patrons seemingly would have to travel some distance in order to gamble, eat and stay there. While we do not know the average price for a room at the TRUMP TAJ MAHAL, the top suite does rent for $10,000 per night. In addition, the entire milieu surrounding defendants' establishment conjures a sense of outlandish expense and money, both spent and won. Therefore, patrons of a casino, and especially one like the TRUMP TAJ MAHAL, must spend considerable care and attention when deciding where they will gamble, eat and stay.

We conclude that the nature of defendants' establishment and the costs of enjoying its services weigh against a finding of likelihood of confusion.

4. *Length of Time Defendants Have Used Name TAJ MAHAL Without Evidence of Actual Confusion Arising*

While the TRUMP TAJ MAHAL only opened on April 2, 1990, the name TAJ MAHAL has been associated with the casino and hotel project since 1986. Defendants acquired the project in 1987, and no evidence of actual confusion between the TRUMP TAJ MAHAL and plaintiff's TAJ MAHAL restaurant has yet arisen. We conclude that this factor weighs slightly against a finding of likelihood of confusion.

5. *Intent of Defendants in Adopting Name TAJ MAHAL*

A defendant's intent in adopting his mark is one of the most important factors when considering whether a likelihood of confusion exists between two marks. "[I]f

a plaintiff can demonstrate that a defendant adopted a mark with the intent of obtaining unfair commercial advantage from the reputation of the plaintiff, then 'that fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Estate of Presley v. Russen,* 513 F.Supp. 1339, 1368 (D.N.J.1981), *quoting Amstar Corp.,* 615 F.2d at 263. In this regard, a defendant's awareness of the plaintiff's mark prior to defendant's use of a similar mark is relevant. *Caesars World, Inc.,* 490 F.Supp at 825.

There is absolutely no evidence that defendants adopted the name TRUMP TAJ MAHAL with the intention of preying on plaintiff's commercial reputation. Defendants only learned of plaintiff's TAJ MAHAL restaurant when their application for a registered service mark was refused in February 1989, and after they had used their designation for over two years and spent untold dollars promoting, advertising, and constructing their version of the TAJ MAHAL. While defendants technically did not put the name TRUMP TAJ MAHAL into commerce until April 2, 1990, it would be absurd to conclude that they had not previously used the name. We conclude that defendants' intent in adopting the name TRUMP TAJ MAHAL was not to obtain an unfair commercial advantage from plaintiff's reputation.

6. *Evidence of Actual Confusion*

Neither plaintiff nor defendants are aware of anyone who has actually confused plaintiff's restaurant with defendants' casino and hotel. This factor weighs against a finding of likelihood of confusion.

7. *Whether the Parties' Services Are Marketed Through the Same Channels and Advertised by the Same Media*

The marketing and advertising methods used by the parties are quite different. Plaintiff promotes its restaurant through advertisements in local Washington newspaper targeted at the Indian–American and Pakistani–American communities. Plaintiff also occasionally passes out handbills

at subway stations and places advertisements in restaurant guides and the telephone directory. It is clear that plaintiff's marketing and promotion efforts are limited to the Washington area. In contrast, defendants promote their casino and hotel through television and radio spots, as well as newspaper and magazine advertisements. Defendants focus their marketing efforts mainly on New Jersey and its contiguous states, especially on the Philadelphia and New York metropolitan areas. Defendants have advertised in Washington newspapers in the past, but they do not otherwise advertise their facility through any of the channels employed by plaintiff to promote its restaurant. We conclude that this factor weighs against a finding of likelihood of confusion.

### 8. Extent to Which Targets of the Parties' Sales Efforts Are the Same

The main targets of plaintiff's sales efforts appear to be people from the Washington area who are interested in Indian cuisine. Since plaintiff only advertises locally, we conclude that the targets of its sales efforts are not consumers from New Jersey or the Middle Atlantic region. The targets of defendants' sales efforts are conventions from all over the United States and people from throughout New Jersey, as well as Philadelphia, New York City and Delaware. As is the case with plaintiff, the targets of defendants' sales efforts roughly tracks the scope of their advertising and promotion campaigns. In addition, defendants target certain types of consumers not targeted by plaintiff, such as gamblers, convention-goers and theatre or show spectators. We note that defendants operate a hotel in one of the few spots where casino gambling is permitted in this country, and that Atlantic City is the only haven for gamblers on the East Coast. Therefore, defendants probably do target consumers in the Washington metropolitan area, albeit for different purposes than the provision of Indian food.

We conclude that the targets of the parties' respective sales efforts are largely dissimilar, although some overlap may exist.

### 9. Relationship of the Parties' Services in the Minds of the Public Because of the Similarity of Function

There is no evidence of the relationship between the parties' services in the minds of the public. We will not hypothesize on whether any such relationship could reasonably exist, but we simply note that any similarities between plaintiff's Indian cuisine and defendants' guest accommodations, casino gambling and live entertainment are faint.

### 10. Other Factors Suggesting That the Consuming Public Might Expect Plaintiff to Provide Services in Defendants' Market

Plaintiff has limited its operation to a single Indian restaurant in Washington for the past 25 years, seemingly without change. The evidence on the present motion indicates no suggestion that plaintiff might be expected to open a casino or hotel with an Indian motif. It further provides no indication that plaintiff might be expected to open another TAJ MAHAL restaurant in New Jersey.

### III. Summary and Conclusion

We conclude that there is no likelihood of confusion between plaintiff's TAJ MAHAL restaurant and defendants' TRUMP TAJ MAHAL hotel and casino. This conclusion is based on our balancing of the ten factors discussed above. In determining the likelihood of confusion, we have concluded that plaintiff's mark is weak, although it is similar to defendants' in that both marks share the unique term TAJ MAHAL. However, the similarity between them is mitigated to some extent by the inclusion of the almost singularly evocative surname Trump in TRUMP TAJ MAHAL.

We further have concluded that there is no evidence that actual confusion has arisen or that defendants adopted their name with the intent to unfairly appropriate plaintiff's commercial reputation. We also have concluded that the targets of the parties' sales efforts and their respective

methods of marketing and advertising are rather dissimilar. Factors indicative of the care and attention expected of consumers when deciding to use defendants' services tend to indicate that patrons of the TRUMP TAJ MAHAL are not likely to be confused about the facility's origin. The other factors which go into determining the likelihood of confusion are largely inconclusive. These findings are not intended for any purposes beyond the narrow contours of the present motion for a preliminary injunction.

Against this backdrop, we conclude that plaintiff has failed to demonstrate a reasonable likelihood of success on the merits of its service mark and unfair competition claims. Accordingly, plaintiff's motion for an order preliminarily enjoining defendants' continued use of the term TAJ MAHAL will be denied. Because our conclusion is based on the grounds that plaintiff has failed to demonstrate a reasonable likelihood of success on the merits of its claims, we need not address the other criteria for granting a preliminary injunction (i.e., immediate and irreparable harm, possibility of harm to non-moving party, and the public interest). An order consistent with this opinion has been entered, a copy of which is attached herewith.

### ORDER

This matter having come before the court on plaintiff's motion for an order preliminarily enjoining defendants from using the term TAJ MAHAL, pursuant to 15 U.S.C. §§ 1114 and 1125, and this matter having been heard before the court, and the court having considered the arguments, exhibits and submissions of the parties, and for good cause shown as set forth in the court's opinion of this date;

IT IS on this 4th day of June, 1990, ORDERED that plaintiff's motion for a preliminary injunction is denied.