**AMERICAN CYANAMID CO., Plaintiff,**

v.

**NUTRACEUTICAL CORP., Defendant.**

No. Civ.A. 97–2018.

United States District Court,
D. New Jersey.

May 28, 1999.

Donald A. Robinson, Robinson, Lapidus & Livelli, Newark, NJ, for plaintiff.

Peggy A. Tomsic, Casey K. McGarvey, Berman, Gaufin, Tomsic & Savage, Salt Lake City, UT, Gerald T. Ford, Diane J. Ruccia, Landman Corsi Ballaine & Ford, Newark, NJ, for defendant.

## OPINION

WOLIN, District Judge.

This case involves claims for trademark infringement, unfair competition, and trademark dilution based on federal law and the laws of the State of New Jersey. The instant matter comes before the Court on defendant's motion for summary judgment, wherein defendant argues, mainly, that its allegedly infringing marks are simply too dissimilar to plaintiff's trademark to be capable of grounding any of plain-

tiff's claims. Because the case involves a claim for infringement of plaintiff's color-spectrum trademark, the Court examines the degree of similarity required between competing marks that make use of common colors. In addition, the claim for dilution requires the Court to adopt an appropriate standard for cases alleging "blurring" of a senior mark.

## STATEMENT OF FACTS

In 1981, plaintiff, American Cyanamid Company,[1] registered a color spectrum trademark with the United States Patent and Trademark Office. The registration claimed the mark for use with vitamin and mineral preparations. Accordingly, plaintiff has since used the mark to identify its "Centrum" products.[2]

The Centrum products, including Centrum (for the general consumer), Centrum Silver (directed at those over fifty years of age), and Centrum Kids (aimed at children over the age of two), are the largest selling multivitamin-multiminerals in the United States. They are sold in numerous trade classes-food, drug, mass merchandise, warehouse clubs, wholesalers, and military commissaries—with almost one hundred percent distribution within these classes. In addition, fiscal year 1998 factory sales for the Centrum products are projected to exceed $275 million; unit sales for the same year are projected at 2.5 billion total tablets for Centrum, 1.4 billion for Centrum Silver, and 132 million for Centrum Kids; and plaintiff enjoys leading market shares for its Centrum and Centrum Silver products.

1. American Cyanamid is a wholly-owned subsidiary of American Home Products Corporation.

2. The Court notes that Whitehall–Robins actually markets the Centrum products on plaintiff's behalf. For the sake of simplicity in this Opinion, however, any actions of Whitehall–Robins will be attributed to plaintiff.

Also, the Court observes that plaintiff reports having used the mark to identify its

Plaintiff has spent considerable resources advertising and promoting Centrum products. A particular strategy in this marketing effort has been to reinforce consumers' familiarity with the Centrum color-spectrum trademark. According to Leading National Advertisers, a syndicated reporting service, $263 million in advertising has been spent on the Centrum products over the last twenty years.

Recently, plaintiff has contemplated expanding the Centrum product line to include individual nutritional supplements.[3] In 1998, plaintiff launched Centrum Herbals, a line of herbal supplements.[4] Plaintiff alleges that expansion of its product line to include Centrum Herbals is within plaintiff's natural zone of expansion.

The appearance of Centrum's trademark is critical to the determination of this motion. The registration certification shows a band of thirteen adjacent colored vertical standing rectangles aligned horizontally. From left to right, the colors of the boxes vary gradually from deep blue to deep red, noticeably imitating the colors of the visual spectrum.

Defendant, Nutraceutical Corporation, sells a wide range of vitamin and dietary supplement products under the tradenames "Solaray" and "Kal". Defendant's products are much more diverse than plaintiff's and include hundreds of different stock keeping units. It is clear, however, that the parties' products at least coexist within an overarching market for vitamins and health food supplements. For instance, Solaray products include the Guaranteed Potency Herb line, which is comparable to plaintiff's Centrum Herbals

Centrum products since 1978, three years before registration.

3. Plaintiff introduced Centrum Singles, a line of single-vitamin products, in 1993–1994, but it subsequently withdrew the line from the market.

4. There are currently six different Centrum Herbal products: St. John's Wort; Ginseng, Ginkgo Biloba; Garlic; Echinacea; and Saw Palmetto.

products. Likewise, Solaray and Kal products include multivitamin-multimineral formulations. There is also evidence that, although defendant's Solaray and Kal products are sold primarily in health food and grocery stores, both plaintiff's and defendant's products are available at some locations.

Solaray and Kal products also bear labels incorporating colors of the visual spectrum. Defendant has offered testimony that the Solaray labels in question, or similarly designed labels, have been sold since as early as 1984. Plaintiff disputes this, but offers no evidence sufficient to give rise to a genuine issue of material fact. Defendant has used the Kal labels at issue on its products since as early as 1994.

The Solaray labels portray five colored stripes on which the word "Solaray" is superimposed in yellow. The stripes are red, orange, yellow, green, and blue. They appear lengthwise on the label and sit one over the other as in the colors of our country's flag.

The Kal labels depict a thin band of colors which range from indigo to blue to green to yellow to orange to red to yellow and then follow the same sequence in reverse. The band attaches to the bold green lettering of the name of the product on the label through the fluid extension of the letter into the color band. In addition, on the same labels, Kal uses a rectangle that includes a gold silhouette of a human form superimposed over a rectangular background colored with bands of colors of the visual spectrum ranging from indigo to green to yellow to orange to red. The color bands are arranged one over another as are the Solaray colored stripes, but are shorter and wider.

No evidence is before the Court that any consumer has, in fact, ever confused the Solaray or Kal brands of food supplement products with Centrum products.

Plaintiff charges that defendant's Solaray and Kal labels infringe Centrum's trademark pursuant to § 32 of the Federal Trademark Act (15 U.S.C. § 1114) and § 43(a) of the Federal Trademark Act (15 U.S.C. § 1125(a)), dilute Centrum's trademark in violation of § 43(c)(1) of the Federal Trademark Act (15 U.S.C. § 1125(c)), and constitute unfair competition under the laws of the State of New Jersey (N.J.S.A. §§ 56:4–1, 2). Defendant contends in this motion for summary judgment that the differences between, and qualities of, the parties' marks are so obvious that, as a matter of law, this Court should dismiss plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., Inc., 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. See Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. dismissed, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); United States v. 225 Cartons, 871 F.2d 409, 419 (3d Cir. 1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S.Ct. 2505. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. See id.

When the non-moving party bears the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court—

that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

The Third Circuit has implied that trial courts should reserve grants of summary judgment in trademark actions for exceptional cases because "likelihood of confusion", a key element in trademark infringement and unfair competition claims, generally is itself a question of fact usually appropriate for a jury's determination. *See Country Floors, Inc. v. Partnership of Gepner and Ford*, 930 F.2d 1056, 1062–63 (3d Cir.1991); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 201–02 (3d Cir.1999) (en banc) (" 'likelihood of confusion' between two marks is a factual matter, subject to review for clear error"). Concomitantly, however, *Country Floors* noted that " 'courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source.' " *Country Floors*, 930 F.2d at 1063 (quoting *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 116 (2d Cir.1984)). Accordingly, courts in this Circuit have not been hesitant to grant summary judgment where no reasonable juror could find that a likelihood of confusion

existed. *See e.g. 800 Spirits, Inc. v. Liquor by Wire, Inc.* 14 F.Supp.2d 675, 678–81 (D.N.J.1998); *Smith v. Ames Dept. Stores, Inc.*, 988 F.Supp. 827, 839–41 (D.N.J.1997); *Taj Mahal Enters., Ltd. v. Trump*, 745 F.Supp. 240, 244–45, 254 (D.N.J.1990).

## DISCUSSION

### A. Trademark Infringement and Unfair Competition

Plaintiff alleges that defendant's use of a color spectrum on its Solaray and Kal products infringes Centrum's trademark pursuant to § 32 of the Federal Trademark Act (15 U.S.C. § 1114) and § 43(a) of the Federal Trademark Act (15 U.S.C. § 1125(a)), as well as constitutes unfair competition pursuant to the law of the State of New Jersey (N.J.S.A. §§ 56:4–1, 2).[5]

■■■ " 'The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion.' " *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir.1983)). Proof of trademark infringement requires plaintiff to show that "(1) the mark is valid and legally protectable, (2) the mark is owned by the plaintiff, and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the good or services." *Fisons Horticulture*, 30 F.3d at 472.

■■■ Likelihood of confusion has been described as the "linchpin" of a trademark infringement or unfair competition claim. *See Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*, 870 F.Supp. 1237, 1251 (D.N.J.1994) (quoting *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590 (5th Cir.1993), *aff'd*, 85 F.3d 612 (3d Cir.1996)). It is a necessary element for claims of federal trademark in-

**5.** Plaintiff's dilution claim will be considered later in this Opinion because it does not in-

volve the element of likelihood of confusion. *See* 15 U.S.C. § 1125(c)(1).

fringement under 15 U.S.C. § 1114 and 15 U.S.C. § 1225(a), *see Victoria's Secret Stores*, 166 F.3d at 205 and *Matrix Essentials*, 870 F.Supp. at 1253, as well as for unfair competition under New Jersey common law and N.J.S.A. § 56:4–1. *See Matrix Essentials*, 870 F.Supp. at 1253; *Apollo Distributing Co. v. Jerry Kurtz Carpet Co.*, 696 F.Supp. 140, 142–43 (D.N.J.1988).

■ Federal registration of the Centrum trademark is "prima facie evidence of the validity of the registered mark and of the registrant's ownership of the mark." *Barre–National, Inc. v. Barr Labs., Inc.*, 773 F.Supp. 735, 740 (D.N.J.1991). Defendant does not question that plaintiff owns the Centrum trademark or that Centrum's federally-registered mark is legally protectable. Accordingly, plaintiff satisfies the first two elements of federal trademark infringement.

Defendant argues, however, that summary judgment on plaintiff's trademark infringement and unfair competition claims is appropriate because no reasonable juror could find, as a matter of law, that the Solaray and Kal labels are likely to be confused with Centrum's trademark. Plaintiff disagrees and urges that the likelihood of confusion issue should be decided by a jury.

### 1. Likelihood of Confusion—Competing Goods

■ A likelihood of confusion is said to exist " 'when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.' " *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir.1991) (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir.1978)). The proof required depends upon whether the goods or services of the parties are in direct competition or are considered not to directly compete.

On this point, the Third Circuit has explained that, "[w]here the trademark owner and the alleged infringer deal in competing good or services, the court need rarely look beyond the mark itself." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir.1983) (citations omitted). "In those cases the court will generally examine the registered mark, determine whether it is inherently distinctive or has acquired sufficient secondary meaning to make it distinctive, and compare it against the challenged mark." *Id.* The Court then focuses on the marks to determine if they are "confusingly similar." *See Country Floors*, 930 F.2d at 1063. Where the good or services are not competing, however, the similarity of the marks is simply one of many factors the court must examine to determine likelihood of confusion.[6] *See Lapp*, 721 F.2d at 462–63.

Here, the parties have briefed the likelihood of confusion issue as if plaintiff's and

---

**6.** The Third Circuit has adopted a ten-factor test to apply in cases alleging trademark infringement and unfair competition against a producer of a non-competing product. The factors are as follows:

(1) degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function; and

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*See Lapp*, 721 F.2d at 463; *see also Ford Motor Co.*, 930 F.2d at 293; *Scott Paper Co.*, 589 F.2d at 1229.

defendant's goods do not compete.[7] The Court finds the parties' decision to frame the issue in this manner unacceptable because there is no doubt that the parties' goods do compete.

First, the nature of the parties' products leads to the inescapable conclusion that they are in competition with one another. Plaintiff sells multivitamins-multiminerals as well as a line of herbal supplements. Defendant also sells multivitamins-multiminerals and herbal supplements. Both products are nutritional in that they intend to promote health and well being. A majority of the ingredients in the products are substantially similar if not identical. Thus, despite defendant's assertion that its products are superior because they are all-natural and contain greater amounts of source nutrients, it is clear that the products are intended to provide substantially similar benefits.

Second, evidence has been presented that some stores carry both plaintiff's and defendant's products, placing the parties' products in direct competition. Further, plaintiff notes that major retailers such as Walmart, Rite Aid, and Phar Mor are beginning to use "store-within-a-store" concepts that feature nutritional centers. Presumably, these outlets will create even greater competition between the parties' products.

Finally, from a consumer's standpoint, the parties' products are no doubt considered in large part functionally interchangeable. See 4 J.T. McCarthy, Trademarks and Unfair Competition § 24:23 (1999) (noting that one definition of " 'competitive' goods is that they are goods that are reasonably interchangeable by buyers for the same purposes"). Although scientists and nutritionists may argue over the comparative virtue of all-natural products versus synthetically formulated substances, it is obvious that many consumers are satisfied that a somewhat comprehensive source of vitamins is a fungible good, obtainable through a number of alternative sources. The Court reaches the same conclusion with regard to the parties' herbal supplements.

Considering these facts, the Court concludes that the parties' products are in direct competition.

## 2. Likelihood of Confusion—Degree of Similarity

■ "Trademark law recognizes categories of marks based on their level of inherent distinctiveness. From least to most distinctive, they are: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. The latter three categories are deemed 'inherently distinctive' and are entitled to protection." Fisons Horticulture, 30 F.3d at 478.

As noted, the ten-factor test for likelihood of confusion is not required when the goods directly compete. See Victoria's Secret Stores, 166 F.3d at 202.

7. The parties' briefs are somewhat confused on this issue. Plaintiff argues in its opposition brief that "[p]laintiff and defendant in this case are competitors since both market multivitamin-multiminerals and individual supplements and it is also apparent that to some extent their products are sold in the same channels of trade." (Plaintiff's Brief in Opposition at 5). Despite this assertion, plaintiff responded to defendant's arguments raised in its moving brief, which treated the goods as not competing. Whether plaintiff acceded to defendant's formulation of the issues for purposes of strategy—concluding that

the ten-factor test raised more issues in defense of summary judgment—or for the sake of completeness in responding to defendant's motion is unclear to the Court. It is apparent from the totality of plaintiff's assertions, however, that plaintiff considers the parties' goods to compete.

Defendant also, in its reply brief, concedes that the parties are "competitors with respect to multivitamin-multiminerals and individual food supplements," but goes on to state that "competing products alone is not a sufficient basis to prove likelihood of confusion." Defendant is undoubtedly correct on this point, but the Court finds it somewhat off the subject. The first question is whether the goods compete. The answer to this question determines the standard for judging infringement.

■ Here, it is clear that Centrum's thirteen bar color band is not generic, descriptive, or suggestive, and thus falls under either arbitrary or fanciful classification. There is, therefore, little doubt that it is inherently distinctive and entitled to protection.

■ The next issue is whether the Solaray and Kal labels are so similar to Centrum's trademark that they create a likelihood of confusion regarding the source, sponsorship, or affiliation of the parties' products. Preliminarily, the Court notes that, in order to be found likely to cause confusion, "[t]he marks need not be identical, only confusingly similar." *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., Inc.*, 963 F.2d 628, 636 (3d Cir.1992), overruled on other grounds by *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Furthermore, "[w]here the goods or services are directly competitive, the degree of similarity of marks needed to cause likely confusion is less than in the case of dissimilar goods or services." 4 J.T. McCarthy, *Trademarks and Unfair Competition*, § 24:22.

■ When comparing marks to determine if their similarity allows for a likelihood of confusion, the appropriate test is not a side-by-side comparison, but whether an average consumer, on viewing the marks in separate instances, would likely confuse or associate the two. *See Fisons Horticulture*, 30 F.3d at 477–78 (citing *American Auto. Ass'n v. AAA Ins. Agency, Inc.*, 618 F.Supp. 787, 792 (W.D.Tex.1985)). An average consumer is considered the least sophisticated consumer in the potential class of buyers. *See Ford Motor Co.*, 930 F.2d at 293. Upon considering the marks, the Court compares their appearance, sound, and meaning. *See Taj Mahal Enterprises*, 745 F.Supp. at 247. But it is " 'the overall impression created by the mark as a whole rather than simply comparing individual features of the marks' " that is determinative. *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir.1983)). Thus, a Court should not base its conclusion upon a dissection of the relevant marks and a contrasting of their unique differences. *See* 3 J.T. McCarthy, *Trademarks and Unfair Competition* § 23:41 (discussing the "antidissection" rule). Instead, the Court compares the overall impression of the marks, as a consumer normally would in the marketplace, to determine if it is likely that they would create confusion in the mind of an ordinary purchaser. *Id.*

■ McCarthy's well known treatise is of assistance when observing the subtleties of this comparison. His work cogently explains that it is not wrong to look at the composites of a mark to consider what characteristics weigh heavily in its makeup; dominant characteristics naturally influence the overall impression created by a mark. *Id.* Likewise, it is useful to the Court to compare dominant features in order to buttress its reasoning. *Id.* But this analysis should not be confused with the law observed by this Court that it is the overall impressions created by the marks that make them similar or dissimilar for the purposes of determining whether a likelihood of confusion exists.

■ Having undertaken to explain this much, the Court would be remiss not to acknowledge that, at bottom, the similarity of appearance test is "really nothing more than a subjective 'eyeball' test." *Id.* at § 23:25 (quoting *J. Wiss & Sons Co. v. Gee Whiz Tool Corp.*, 364 F.2d 910 (6th Cir. 1966)). Thus, the Court embarks on this endeavor with the understanding that it acts as "an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source." *See Country Floors*, 930 F.2d at 1063 (quoting *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984)). In other words, the Court is authorized by law in a summary judgment

context to require a minimum of similarity between the marks before it will impanel a jury to pass upon the issue of whether a likelihood of confusion exists.

Having outlined the analysis, and undertaken a review of the exhibits, the Court concludes that defendant's Solaray and Kal labels cannot reasonably be considered to convey the same overall impression as plaintiff's Centrum trademark. The marks are simply too dissimilar to meet even the minimum threshold of similarity that would require the issue of likelihood of confusion to go to a jury.

Although the Court bases its conclusion on the overall impression the marks create after viewing each independent from each other in time and place, an examination of the marks in greater detail reveals the obvious reasons why the impressions left by the marks are so distinct.

It is clear that the marks make use of the common colors blue, green, yellow, orange, and red, and that the colors generally follow the order naturally found in the visual spectrum. There, however, the similarities end. In fact, the claim of the use of certain colors in the order they are found in the visual spectrum (or as depicted in a rainbow) is the sum total of Centrum's claim for infringement. It is not enough.

Centrum's trademark registration claims specifically "the colors thereof ranging from blue, green, yellow and orange to red as shown on the drawing," thus protecting the use of the colors in a certain arrangement. Clearly, the use of five common colors is not what is protected by Centrum's trademark; that would be somewhat akin to claiming the right to sole ownership of five letters of the alphabet. Rather, as the registration makes so clear, the protected mark is the use of the colors ranging from blue to red over a total of thirteen different colored rectangles all connected along a single band from left to right. Thus, the unavoidable impression left by each of the marks is certainly the use of color, but in a manner so distinct as to not allow for a likelihood of confusion.

A consideration of the differences between the marks provides some rationale for what is so obvious to the naked eye.

### a. Centrum versus Solaray

As noted, Centrum's trademark consists of thirteen narrow adjacent upright colored rectangles aligned horizontally. From left to right, the colors of the boxes vary gradually from deep blue to deep red in the order of colors appearing in the visual spectrum. This arrangement makes up the totality of the allegedly infringed trademark.

In contrast, Solaray's label uses five long colored stripes ordered one on top of another as in the stripes of our country's flag. From top to bottom the colors range from red to blue. There is no gradation of hue in any color. Rather, red is red, orange is orange, yellow is yellow, green is green, and blue is blue. Further, the word "Solaray" is superimposed in yellow script over the colored stripes.

The comparison reveals the Solaray and Centrum marks to differ in that: (1) Centrum's colored rectangles vary gradually from deep blue to deep red over a thirteen bar spectrum whereas Solaray's stripes are distinct from each other with no closely related similar colors on the label; (2) Centrum's rectangles are narrow and stand upright whereas Solaray's stripes are long and stretch lengthwise; (3) Centrum's color spectrum moves from blue to red in the order of left to right whereas Solaray's stripes range from red to blue in the order of top to bottom; (4) Centrum uses thirteen different hues of color whereas Solaray uses only five; and (5) Centrum's color bar is plain and stands by itself whereas Solaray's colored stripes bear the word "Solaray" superimposed over them in yellow script.

## b. Centrum versus Kal

The Kal labels include a thin band of colors that range from indigo to blue to green to yellow to orange to red to yellow again, and then follow the same sequence in reverse. The band attaches to the green lettering of the name of the product on the label through the fluid extension of a letter into the band. In addition, Kal uses a rectangle that includes a gold silhouette of a human form superimposed over a rectangular background colored with bands of colors of the visual spectrum ranging from indigo to red. The color bands are arranged one over another and are short in width.

The Centrum and Kal marks thus differ in that: (1) Centrum's color trademark sits independent from any lettering whereas Kal's thin color bar blends into one letter of the name of the product, which is written in large green letters; (2) Centrum's trademark uses thirteen color grades each contained in a rectangle whereas Kal uses significantly less colors in fluid transition; (3) Centrum's color band is prominent and the colors are large whereas Kal's color band is a minor portion of its label and the band is small; (4) Centrum has nothing like Kal's gold colored human body silhouette; and (5) Centrum's colors range from blue to red in the order of left to right whereas Kal's color band reverses the order of colors in the middle, and the back-ground colors in the box with the human silhouette vary from indigo to red in the order of top to bottom.

The dissimilarities between the marks fully support the Court's conclusion, based on the overall impression made by the exhibits, that no reasonable trier of fact could find the use of defendant's labels to create a likelihood of confusion as to source. The Court determines that, in this case, the appearance of the marks is dispositive of the issue.

## c. Impression of Marks

Plaintiff, however, also argues that its mark conveys an impression of a rainbow and that defendant's marks create this impression also, so that a likelihood of confusion exists as to source. The Court disagrees for a simple reason: even assuming. for purposes of this motion that a rainbow is represented by a graded display of colors, and that plaintiff's and defendant's marks could be said to evoke such a concept, the fact remains that the marks identify significantly different rainbows.[8] So different, in fact, that no likelihood of confusion could exist when recollecting the marks.[9] Further, as has been noted, the marks do not just use rainbow colors. Centrum uses thirteen colored rectangles arranged horizontally over a broad band. Solaray uses five stripes with the word "Solaray" superimposed over the colors.

8. Defendant's reference to its own mark as using a rainbow is immaterial in light of this analysis.

9. As one court has astutely observed:
The very fact of calling to mind may indicate that the mind is distinguishing, rather than being confused by, the two marks.... Seeing a yellow traffic light immediately "calls to mind" the green that has gone and the red that is to come, or vice versa; that does not mean that confusion is being caused. As we are conditioned, it means exactly the opposite.
*Application of Ferrero*, 479 F.2d 1395, 1397 (C.C.P.A.1973).
Indeed, even the recollection of Centrum's trademark upon viewing defendant's labels is not sufficient without confusion:

"Likely ... to cause confusion" means more than the likelihood that the public will recall a famous mark on seeing the same mark used by another. It must also be established that there is a reasonable basis for the public to attribute the particular product or service of another to the source of the goods or services associated with the famous mark. To hold otherwise would result in recognizing a right in gross, which is contrary to principles of trademark law. *University of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 703 F.2d 1372, 1374 (Fed.Cir.1983). This point is even more forceful here, where the marks are clearly not identical and the Court has found them so dissimilar as to be incapable of causing a likelihood of confusion.

Kal uses a color band, large green lettering, and an image of a gold human body over a color band. Thus, even if all the marks could be found to convey some impression of rainbows, there is no connection in the mind between these rainbows or their corresponding products.

Based on the foregoing analysis, the Court will grant summary judgment against plaintiff on the trademark infringement and unfair competition claims because plaintiff has failed to present evidence that a reasonable juror could find a likelihood of confusion to exist when considering the parties' marks.

## B. Trademark Dilution

Plaintiff also charges that use of the Solaray and Kal labels dilutes Centrum's trademark. The federal anti-dilution statute, effective January 1, 1996, reads, in pertinent part, as follows:

The owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.

15 U.S.C. § 1125(c).

Dilution is defined as:

the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—

(1) competition between the owner of the famous mark and other parties, or

(2) likelihood of confusion, mistake, or deception.

15 U.S.C. § 1127.

The anti-dilution statute thus created a new "federal cause of action to protect famous marks from unauthorized users that attempt to trade upon the goodwill and established renown of such marks and, thereby, dilute their distinctive quali-

ty." H.R.Rep. No. 104–374, at 3, *reprinted in* 1995 U.S.C.C.A.N. at 1030. In this context, the forbidden act is the use of a mark that lessens the capacity of a famous mark to identify and distinguish goods or services. *See* 15 U.S.C. § 1127. Importantly, the language of the anti-dilution statute does not require a finding of a likelihood of confusion. *See Id.* Further, the federal anti-dilution statute, unlike certain state anti-dilution statutes, applies to both cases involving competing and noncompeting goods. *See I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 45–46 (1st Cir.1998); 4 J.T. McCarthy, *Trademarks and Unfair Competition,* § 24:90.

Congress has stated that dilution may result from either "uses that blur the distinctiveness of [a famous] mark or [that] tarnish or disparage it." H.R.Rep. No. 104–374, at 2, *reprinted in* 1995 U.S.C.C.A.N. at 1029. Although plaintiff has not identified which theory it intends to proceed under, the Court considers it obvious that plaintiff must allege a claim for blurring.

Blurring involves the classic "whittling away" of the strength of a famous mark through the use of a junior mark. The danger is that "[c]ustomers or prospective customers will see the plaintiff's mark used by other persons to identify different sources on a plethora of different goods and services", thus lessening the capacity of the famous mark to act as a "commercial symbol and identifier." *See* 4 J.T. McCarthy, *Trademarks and Unfair Competition,* § 24:94.

Courts have struggled with the proper analysis to apply for determining when blurring occurs.[10] In *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 875 F.2d 1026, 1035 (2d Cir.1989), Judge Sweet articulated a six step analysis for when dilution occurred through blurring in the context of the New York anti-dilution statute. The analysis required a consideration of (1) the similarity of the marks; (2)

---

**10.** This Court has been unable to locate any Third Circuit decisions taking a stand on this issue. Accordingly, the Court looks to other Circuits for their thoughtful guidance.

the similarity of the products; (3) the sophistication of consumers; (4) the existence or nonexistence of predatory intent; (5) the renown of the senior mark; and (6) the renown of the junior mark. *Id.* Courts and commentators have criticized this analysis in the federal context, however, because it appears to adopt factors from the likelihood of confusion test relevant to trademark infringement. The criticism is that many of the factors are irrelevant to dilution claims. *See I.P. Lund Trading ApS,* 163 F.3d at 49 (finding that the six-factor test is inappropriate in determining whether dilution has occurred); *Hershey Foods Corp. v. Mars, Inc.,* 998 F.Supp. 500, 520 (M.D.Pa.1998) (noting that "whether the products are similar or not adds nothing to the analysis" because dilution applies to competitors). McCarthy states clearly that he considers factors (2), (3), (4), and (6) to have little if any relevance to claims brought under the federal anti-dilution act. *See* 4 J.T. McCarthy, *Trademarks and Unfair Competition,* § 24:9.1 (making a compelling case that only similarity of the marks and renown of the senior mark are pertinent to the analysis).

With this background in mind, the Court considers a recent Fourth Circuit decision that considers directly the appropriate standard for finding trademark dilution. In *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Develop.,* 170 F.3d 449, 450 (4th Cir.1999), Ringling alleged that Utah's use of the trademark slogan, THE GREATEST SNOW ON EARTH, diluted Ringling's trademark slogan, THE GREATEST SHOW ON EARTH. At trial, Ringling took the position that "as a matter of statutory interpretation, 'dilution' by 'blurring' occurs whenever a jun-

ior mark is either identical to or sufficiently similar to the famous mark that persons viewing the two instinctively will make a 'mental association' with the two." *Id.* at 452.

■ On appeal, the Fourth Circuit disagreed, finding that Ringling's proffered "mental-association-alone" interpretation was inadequate proof of dilution. The court found it critical that the federal statute "proscribes and provides remedy only for actual, consummated dilution and not for the mere likelihood of dilution." *Id.* at 458. Further, the court astutely observed that "by specifically defining dilution as 'the lessening of the capacity of a famous mark to identify and distinguish good or services,' the federal Act makes plain what the state statutes arguably do not: that the end harm at which it is aimed is a mark's selling power, not the mark's 'distinctiveness' as such." *Id.* Accordingly, the Court rejected Ringling's "mental-association-alone" interpretation. Instead, it set forth the following requirements for proof of dilution under the federal anti-dilution statute:

> (1) a sufficient similarity between the junior and senior marks to evoke an "instinctive mental association" of the two by a relevant universe of consumers which (2) is the effective cause of (3) an actual lessening of the senior mark's selling power, expressed as "its capacity to identify and distinguish goods or services."

*Id.*[11]

Ultimately, the Court applied this standard to the facts and affirmed the district court's assessment that Ringling's consumer survey evidence failed to establish dilution. *Id.* at 462–63.[12]

---

**11.** In setting forth this standard, the Fourth Circuit expressly disavowed Judge Sweet's six-factor test for blurring in the context of a claim for dilution under the federal statute. *See Ringling,* 170 F.3d at 464 ("of the factors, only mark similarity and, possibly, degree of 'renown' of the senior mark would appear to have trustworthy relevance under the federal

Act") (citing 4 J.T. McCarthy, *Trademarks and Unfair Competition,* § 24:9.1).

**12.** The court found that survey evidence failed to prove that Utah's use of the mark lessened the capacity of Ringling's trademark slogan to identify and distinguish its circus as the subject's mark. Further, the Fourth Circuit

This Court is in agreement with the Fourth Circuit and adopts the standard enunciated by the court in *Ringling*. Utilizing that standard, it is now time to consider the parties' proofs.

Defendant argues that its labels are not sufficiently similar to plaintiff's trademark to dilute Centrum's mark. Further, defendant argues that plaintiff's trademark is not famous as required by the statute.

For the purposes of this motion, the Court accepts that Centrum's trademark is famous as measured by the totality of the eight factors listed in 15 U.S.C. § 1125(c)(1).[13] The key issue, as it appears to the Court, is whether defendant's labels are sufficiently similar to Centrum's trademark to be capable of diluting plaintiff's mark.

■ It has been commented that "[t]he federal anti-dilution statute is silent on the crucial question of how similar the conflicting marks must be to create a requisite 'dilution.'" *See* 4 J.T. McCarthy, *Trademarks and Unfair Competition*, § 24:90.1 (noting that, for blurring or tarnishment to occur, "the marks must at least be similar enough that a significant segment of the target group of customers sees the two marks as essentially the same"). The Court holds that a substantial similarity must exist between the marks so that the junior and senior marks could be found to evoke an "instinctive mental association" of the two. *See Ringling*, 170 F.3d at 458.

The Court recognizes the danger in attempting to define too definitively the threshold requirement of similarity between two marks. It is more prudent to leave such examinations to a case by case basis, acknowledging that the potential for widely divergent mental association between individuals is great.

Notwithstanding this cautionary advice, the Court considers it reasonable to require two marks to be substantially similar, else it would be impossible for consumers to regard the marks as "essentially the same" or to trigger an "instinctive mental association" between the two. Indeed, a substantial degree of similarity logically forms the basis for the further requisite showing that the junior mark act as the effective cause of an actual lessening of the senior mark's selling power, expressed as "its capacity to identify and distinguish goods or services."

■ Applying this reasoning, the Court concludes that plaintiff's claim for dilution fails as a matter of law. First, the Court reiterates its finding that the overall impressions created by the marks are distinct from one another. The Court has already explained in detail that the only real similarity between any of the marks is the use of colors in the general order that they appear in the visual spectrum. Acknowledging that the similarity searched for here is not that of a likelihood of confusion, but rather a capacity to trigger

agreed with the trial court's point that proofs relying on mental impressions invoked in consumers upon viewing the marks must go beyond mere recognition of a "visual similarity of the two marks to allow a reasonable inference that the junior mark's use has caused actual harm to the senior mark's selling or advertising power." *Ringling*, 170 F.3d at 463.

13. (A) the degree of inherent or acquired distinctiveness of the mark;
(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
(C) the duration and extent of advertising and publicity of the mark;
(D) the geographical extent of the trading area in which the mark is used;
(E) the channels of trade for the goods or services with which the mark is used;
(F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
(G) the nature and extent of use of the same or similar marks by third parties;
(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
15 U.S.C. § 1125(c)(1).

an "instinctive mental association" between the junior and senior marks such that the consumer regard the marks as "essentially the same," the Court finds that defendant's marks are incapable of triggering such mental association with plaintiff's mark.

Equally destructive to plaintiff's case on this point is the fact that plaintiff has failed to offer any evidence of actual lessening of Centrum's selling power through its mark's "capacity to identify and distinguish goods and services." Because plaintiff offers no evidence by which a jury could find actual dilution, the Court finds that plaintiff's dilution claim fails as a matter of law. The Court will therefore grant defendant's summary judgment motion on plaintiff's dilution claim.

## CONCLUSION

The Court holds that no reasonable juror could conclude that a likelihood of confusion exists between Centrum's trademark and the Solaray and Kal labels. The Court will, therefore, grant summary judgment in favor of defendant on plaintiff's trademark infringement and unfair competition claims. Furthermore, the Court holds that defendant's labels are not sufficiently similar to plaintiff's trademark to be capable of creating an "instinctive mental association" between the parties' marks such that the marks would be regarded by a consumer as "essentially the same." In addition, the Court finds that plaintiff has totally failed to offer evidence by which a jury could find actual dilution through the lessening of Centrum's selling power, meaning its mark's "capacity to identify and distinguish goods and services." Accordingly, the Court will also grant summary judgment in favor of defendant on plaintiff's dilution claims. Because defendant has succeeded in obtaining summary judgment on all of plaintiff's claims, the Court will dismiss plaintiff's suit with prejudice.

## ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 28th day of May, 1999,

ORDERED that summary judgment in favor of defendant on plaintiff's trademark infringement and unfair competition claims is granted; and it is further

ORDERED that summary judgment in favor of defendant on plaintiff's dilution claims is granted; and it is further

ORDERED that plaintiff's suit is dismissed with prejudice.