**INTERPACE CORPORATION, Appellant,**

v.

**LAPP, INC., Appellee.**

**No. 83–5036.**

United States Court of Appeals, Third Circuit.

Argued Aug. 4, 1983.

Decided Nov. 18, 1983.

Andrew V. Galway (argued), Liddy, Sullivan, Galway & Vaccaro, New York City, for appellant; Susan L. Cohen, Liddy, Sullivan, Galway & Vaccaro, New York City, Muriel Kaplan, Bloomfield, N.J., for appellant.

Daniel H. Bobis (argued), David A. Jackson, Popper, Bobis & Jackson, Newark, N.J., for appellee.

Before GIBBONS and HUNTER, Circuit Judges, and MANSMANN,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case presents the difficult issue of trademark protection where two parties are using the same trademark on non-competing products. The Lapp Division of plaintiff Interpace Corporation ("Lapp-Interpace") manufactures and sells ceramic insulators under the "Lapp" trademark. The Lapp name was first applied to insulators in 1916, when John S. Lapp formed the Lapp

---

* Honorable Carol Los Mansmann, United States District Judge for the Western District of Pennsylvania, sitting by designation.

Insulation Company. In 1953 the Lapp trademark, as applied to ceramic insulators, was entered in the principal trademark register. In 1969 Interpace Corporation acquired the Lapp Insulation Company, along with the Lapp trademark and accompanying goodwill.

Defendant, Lapp, Inc., is the United States marketing arm of Lapp, Stuttgart, Gmbh and U.I. Lapp, A.G. The parent companies were formed in 1957 by Oskar Lapp to manufacture and sell electrical wire and cable. Lapp, Inc. was formed in 1976 as a New Jersey corporation with its headquarters in Fairfield, New Jersey. Since 1977 it has distributed wire, cable and related electrical hardware in the United States under the "Lapp" and "Lapp Cable" trademarks. It has never applied for federal registration of this mark.

Lapp-Interpace brought suit to enjoin Lapp, Inc. from using the "Lapp" name on its products, alleging direct infringement of a registered mark, 15 U.S.C. § 1114 (1976), false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), and infringement of New Jersey common law trademark rights. The district court issued a lengthy opinion following a bench trial. Although the district court's extensive findings of fact generally favored the plaintiff's claim, the court felt compelled by its reading of *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225 (3d Cir.1978) to dismiss the complaint. Although we disagree with the district court's reading of *Scott Paper,* its findings of fact permit us to resolve this case as a matter of law. We will reverse and direct that judgment be entered in favor of the plaintiff, Lapp-Interpace.

I

■ The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion. Where the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself. In those cases the court will generally examine the registered mark, determine whether it is inherently distinctive or has acquired sufficient secondary meaning to make it distinctive, and compare it against the challenged mark. To determine likelihood of confusion where the plaintiff and defendant deal in non-competing lines of goods or services, the court must look beyond the trademark to the nature of the products themselves, and to the context in which they are marketed and sold. The closer the relationship between the products, and the more similar their sales contexts, the greater the likelihood of confusion. *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),* 544 F.2d 1167 (2d Cir.1976). Once a trademark owner demonstrates likelihood of confusion, it is entitled to injunctive relief. 15 U.S.C. § 1114(1) (1976).

■ This court in *Scott Paper* restated the test for injunctive relief in somewhat different terms. Rather than focusing on likelihood of confusion, we asked whether the plaintiff in a non-competing products case had developed "secondary meaning" in the defendant's market. Likelihood of confusion and secondary meaning are in theory distinct concepts. In practice, however, the evidence required to show either, and the legal consequences flowing from a finding of either, will be virtually indistinguishable. As McCarthy states in his well-known treatise, "secondary meaning and likelihood of buyer confusion, although two separate legal issues, will be difficult to distinguish in viewing the evidence." 1 J.T. McCarthy, *Trademarks and Unfair Competition* § 15:3 (1973). Secondary meaning exists when consumers seeing a trademark assume that the product it labels came from a particular source. If in fact the product did not come from that source, then there has been buyer confusion. The test we stated in *Scott Paper* is thus indistinguishable in practice from the more traditionally phrased likelihood of confusion test.

■ Over the years the courts have identified a number of factors to aid in determining likelihood of confusion in non-competing products cases. *See Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),* 544

F.2d 1167, 1173 (2d Cir.1976); *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Sears, Roebuck & Co. v. Johnson,* 219 F.2d 590, 593 (3d Cir.1955). Those factors, as set forth in *Scott Paper,* are: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market. 589 F.2d at 1229.

## II

The trial court did not formally apply the *Scott Paper* factors, but it did make findings in every relevant area of inquiry. For purposes of clarity, we will review the district court's findings as applied to the *Scott Paper* factors.

The district court determined that the trademarks of plaintiff and defendant are for all practical purposes identical; even when the defendant markets its products under the "Lapp Cable" mark, the district court found that "the name Lapp stands out." *See American Plan Corp. v. State Loan & Finance Corp.,* 365 F.2d 635, 639 (3d Cir.1966), *cert. denied,* 385 U.S. 1011, 87

S.Ct. 719, 17 L.Ed.2d 548 (1967) ("Where the names are identical . . . the names in themselves are evidence of likelihood of confusion."). The plaintiff's mark is a strong one. Lapp-Interpace and its predecessor, Lapp Insulation Company, have used the Lapp trademark on insulators for over fifty years, and the mark has become quite distinctive of the plaintiff's products.[1] It is true that defendant Lapp, Inc. adopted the Lapp name from its German parent companies. The district court found that Lapp, Inc., while it may have acted innocently, was careless in not conducting a thorough name search for American uses of the name. Lapp-Interpace introduced several examples of actual confusion in buyers. The district court found the next factor—whether the goods are marketed through the same channels for trade and advertised through the same media—to weigh particularly heavily in the plaintiff's favor. The court noted that both parties used the same methods of sale and both took space in the Thomas Register, the electrical industry's major reference source.

The district court found that while the parties' sales efforts are not now directed to the same targets, they will likely be in the future. It determined that Lapp-Interpace markets its products in large part to "original equipment manufacturers" ("OEM") who combine these components with others to form final assembled products for sale in the United States. Lapp, Inc. also sells to American OEMs, but primarily for use in products that will be shipped to Europe. American electrical components are designed to meet specifications developed by the Underwriters Laboratory ("UL"), while European components must meet substantially different specifications. Because of these differences in design, American and European components are not used together. The potential buyers for the parties' products have in the past, therefore, been

---

1. Lapp, Inc. vigorously contends on appeal that "Lapp," as a surname, is not entitled to trademark protection. Such was the law at one time but as the district court noted, surnames have for many years been accorded full protection if they have become distinctive. 15 U.S.C. § 1052(f) (1976). *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1228 (3d Cir. 1978).

predominantly distinct and separate.[2] Lapp, Inc., however, has recently begun marketing UL-rated wire and cable, presumably for use in the United States. This development considerably increases the overlap in the parties' actual and potential customer pool. Despite some contrary indications, then, the court below indicated that this factor tipped in plaintiff's favor. The court also determined that plaintiff's ceramic insulators and defendant's wire and cable, despite some differences, are functionally closely related: "[T]he products on both sides are rather basic electrical components that can be and no doubt are often used together in a wide variety of more complex electrical assemblies."

Finally, and perhaps most important, the district court found that even sophisticated customers in the electrical field would find it natural or likely that "the manufacturer of Lapp ceramic insulators and pole hardware ... should expand into wire and cable." All witnesses who were asked to address the subject conceded that "some companies ... make or offer ceramic insulators and wire or cable as well...." Moreover, Lapp-Interpace introduced into evidence a confidential report indicating actual plans to expand into the wire and cable business.[3] The likelihood-of-expansion factor is pivotal in non-competing products cases such as this. One of the chief reasons for granting a trademark owner protection in a market not his own is to protect his right someday to enter that market. 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 24:5

(1973). When it appears extremely likely, as it does here, that the trademark owner will soon enter the defendant's field, this final factor weighs heavily in favor of injunctive relief.

Based on its review of the evidence, the court concluded that "[t]he facts, and the direction in which they point, are clear;" the defendant's use of the Lapp name is likely to cause confusion. The trial court suggested that this likelihood of confusion could be reduced, and a fair balance struck, if Lapp, Inc. changed its name.[4]

Having determined that the facts lay in the plaintiff's favor, and having elaborated the appropriate remedy, the district court nevertheless refused to grant relief because "the rule of law laid down in the *Scott Paper* case precludes the award of any injunctive relief." The district court apparently read *Scott Paper* to hold that likelihood of confusion, standing alone, is not sufficient to trigger injunctive relief, and that a further showing is required to demonstrate the requisite secondary meaning. Moreover, in the district court's view, a plaintiff can demonstrate this secondary meaning only by actually entering the defendant's market. The district court therefore dismissed Lapp-Interpace's complaint because "[i]n this case, since the plaintiff had never marketed wire or cable of any kind under the name 'Lapp' ..., there obviously cannot be any evidence of secondary meaning in the market for wire and cable ...."

---

**2.** A witness for Lapp, Inc. testified that only seven percent or so of its customers were likely to buy ceramic insulators. The district court noted, however, that this figure is not conclusive because it reveals nothing of the volume of sales to this seven percent.

**3.** The defendants found the possibility of this expansion sufficiently credible to seek a protective order preventing Lapp-Interpace from using information about Lapp, Inc.'s production and marketing techniques in their effort to expand into wire and cable. In the accompanying memorandum, counsel for defendant explained the protective order was needed because they had learned that "Plaintiff intends to expand its product line to include products

in the area of low voltage applications ... and that it may wish to enter the cable business."

**4.** The district court was quite specific in its suggestions:

The corporate name should probably be modified to remove "Lapp", since this key feature in common is what causes problems in indexes, registers, and the like. Yet, to continue some effective indication of its relation with Stuttgart, it might use the name "U.I.L. Cable, Inc.", and mark its home-made product with the cable symbol. In this way, the prominence of "Lapp" would be attenuated, yet defendant would not be deprived of its legitimate use ....

The district court erred in its interpretation of *Scott Paper*. Though we did draw a formal distinction between likelihood of confusion and secondary meaning in that case, as noted above, proof of one is proof of the other. Furthermore, we never in any way suggested that a plaintiff can prove secondary meaning only by entering the defendant's market. The whole purpose of the ten-factor analysis offered in *Scott Paper* is to determine secondary meaning in exactly those cases where the trademark owner has *not* entered the defendant's market.

The essence of non-competing products cases is that the products are not in fact competitive. By definition, the plaintiff in these cases has never sold products in the defendant's market. *Scott Paper* in no way requires that he must; in fact, we expressly noted in that case that "[u]nder certain circumstances, a trademark can develop a secondary meaning *as to goods or services to which the mark has not been applied.*" 589 F.2d at 1228 (emphasis added). The district court below erred in holding otherwise.

The defendants in this case do not challenge the district court's findings of fact, and a careful review of the record does not reveal them to be clearly erroneous. Nor do we find any fault with the lower court's finding of likelihood of confusion. We will reverse the judgment of the district court, and remand for the purpose of entering judgment for plaintiff Lapp-Interpace and fashioning the proper remedy.