**SAFEGUARD BUSINESS SYSTEMS, INC., Plaintiff,**

v.

**NEW ENGLAND BUSINESS SYSTEMS, INC. d/b/a NEBS Computer Forms, Defendant.**

**Civ. A. No. 87–4651.**

United States District Court, E.D. Pennsylvania.

Sept. 21, 1988.

Manny D. Pokotilow, Philadelphia, Pa., for plaintiff.

Ralph A. Loren, William C. Geary, III, Boston, Mass., Randolph M. Baker, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DITTER, District Judge.

This case comes before the court on a motion for a preliminary injunction. The ultimate question is whether plaintiff's business forms trademark enables it to preclude defendant from using a similar mark on its computer software. After hearing, I make the following:

### FINDINGS OF FACT

1. Plaintiff, Safeguard Business Systems, Inc., (SAFEGUARD), is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 455 Maryland Drive, Fort Washington, Pennsylvania 19034.

2. Defendant, New England Business Service, Inc., doing business as Nebs Computer Forms (NEBS), is a corporation organized and existing under the laws of the State of Massachusetts, having a principal place of business at 500 Main Street, Groton, Massachusetts 01470.

3. NEBS sells and delivers various products in its product line in the Commonwealth of Pennsylvania, including a substantial amount in this judicial district.

4. The amount in controversy exceeds the sum of $10,000.00 exclusive of interest and costs and is between citizens of different states.

5. This court has jurisdiction over the defendant under 28 U.S.C. § 1332 and the Trademark Laws of the United States, Title 15, United States Code, § 1051 et seq. and jurisdiction is confirmed by 15 U.S.C. § 1121 and § 1125(a), at 28 U.S.C. § 1338(a).

6. During the year 1981, Eric Hayman, SAFEGUARD's group director of marketing, created the mark FAST FORM which is covered by United States Trademark Registration No. 1,301,545 issued October 23, 1984.

7. Before issuance, SAFEGUARD's trademark was published for opposition by the U.S. Patent and Trademark Office ("PTO"), on October 5, 1982. At the time of publication, the description of goods read "data processing business forms."

8. This description of the goods was narrowed as part of a settlement of an opposition proceeding within the PTO filed by a third party, Avery International Corporation ("AVERY"). AVERY alleged that SAFEGUARD's use of FAST FORM was confusingly similar to AVERY's trademark FASFORM. AVERY used FAS-FORM for self-adhesive sheet and roll materials used to make labels, badges, signs, and the like, primarily with computers. SAFEGUARD and AVERY entered into a settlement agreement which required SAFEGUARD to amend its description of goods to distinguish them from AVERY's FASFORM product.

9. As a result of the settlement of the opposition proceeding, SAFEGUARD's FAST FORM Trademark Registration No. 1,301,545 was issued by the PTO. The narrowed description of the goods reads: "non-self adhesive-type multisheet business forms for use in recording and simultaneously transferring data for specialized market applications and specifically intended to be used as a component in one-write pegboard accounting systems."

10. A one-write accounting system uses a peg board and business forms that have holes along the left margin and a strip of carbon paper. The form is intended to be positioned on the peg board and held in place with relation to another form. Information entered on the top form is reproduced on the second form at a desired place through the carbon paper strip. The one-write system can be used in a variety of applications where the end-result is intended to be the immediate transfer of information from one form to a specific place on another form.

11. NEBS has several distinct divisions, one of which is the computer forms division. The company sells a variety of business supplies and products through separate catalogues put out by each of its divisions.

12. NEBS sales are made exclusively through catalogues and advertising. NEBS does not employ a sales force to visit customers and solicit orders and NEBS customers place orders directly to NEBS.

13. NEBS computer forms division sells computer software programs under the trademark FASTFORM. This software is a type of word processing package which allows a computer user to enter data at specified locations on specific forms shown on the computer screen. Continuous business forms are then printed from information stored on the computer. The software also has a variety of storage and summary capabilities. Approximately twenty different software titles are sold by NEBS, each being applicable to a specified business form. The forms which can be filled from the FASTFORM software can also be filled in manually or through the use of other brands of software.

14. NEBS FASTFORM software is sold in packaging which prominently displays the NEBS logo in close proximity to the FASTFORM trademark. The NEBS FASTFORM software is extensively advertised in the catalogues distributed by NEBS computer forms division. The forms

filled out by the software are advertised and sold in the same catalogues.

15. NEBS uses its FASTFORM trademark only in conjunction with its typing software. The mark is not used on any NEBS forms filled out by the FASTFORM software, nor any other NEBS forms.

16. NEBS sells a variety of business forms which can be filled in by the NEBS FASTFORM software or by the software of others. Many other suppliers also sell forms which could be filled in by NEBS FASTFORM software. SAFEGUARD does not sell any forms bearing the FAST FORM designation which can be filled in by NEBS FASTFORM software.

17. NEBS business forms division sells a variety of business forms, including forms and supplies used with one-write systems. The business forms division and the computer forms division of NEBS are distinct. Each maintains a separate office, publishes a separate catalogue, and has a separate telephone number.

18. The catalogue published by NEBS business forms division contains no advertisements for NEBS FASTFORM software nor does it contain any reference to the FASTFORM mark.

19. The majority of NEBS customers who receive the computer forms and supplies catalogue do not receive the business forms catalogue. NEBS strives to send its computer forms and supplies catalogues only to those consumers who are, or are likely to be, computer users. As a result, there are only a small percentage of NEBS customers who receive the catalogues of both divisions.

20. The notation on pages 53 of a NEBS computer forms and supplies catalogue which states "more FASTFORMS on the next pages" refers to the FASTFORM typing software which appears on pages 54 and 55 of the same catalogue.

21. NEBS does not sell any computer software under the FASTFORM trademark which fills out one-write business accounting forms.

22. SAFEGUARD utilizes commissioned sales agents throughout the United States to sell FAST FORM business forms. These agents show samples of FAST FORM business forms to potential customers and demonstrate how they are used.

23. SAFEGUARD's promotional activities of the FAST FORM business forms have primarily been through its sales representatives. It does not specially advertise the FAST FORM name.

24. Over 60,000,000 (60 million) forms were sold under the mark FAST FORM in the years 1983 through 1987.

25. SAFEGUARD's business forms having the mark FAST FORM printed on their face have been sold throughout the United States and used with other business forms made by SAFEGUARD and SAFEGUARD's one-write systems in a substantial number of different businesses.

26. There has been no evidence that the consuming public interprets the mark FAST FORM as a representation that the business forms on which it is printed originated from SAFEGUARD.

27. SAFEGUARD uses the mark FAST FORM only in conjunction with some, but not all, of its one-write business accounting forms. This mark is not used in conjunction with any other types of business forms.

28. Like any source of information, SAFEGUARD's one-write business forms sold under the mark FAST FORM are usable in association with computer systems.

29. SAFEGUARD and NEBS compete directly on the sale of certain forms, including those SAFEGUARD markets under the FAST FORM trademark.

30. In addition, NEBS has advertised that it is a supplier of SAFEGUARD replacement checks and forms and defendant has advertised that it sells "forms for Safeguard Systems."

31. NEBS FASTFORM software and the forms it fills in can be used by the same customers that use SAFEGUARD's one-write FAST FORM forms. However, NEBS' FASTFORM software would not be used to fill out a SAFEGUARD one-write FAST FORM form.

32. None of the forms that SAFE-GUARD sells to be filled in by computers bears the FAST FORM designation.

33. NEBS FASTFORM typing software and SAFEGUARD's FAST FORM one-write system forms do not compete with each other.

34. Because SAFEGUARD sells products exclusively through orders solicited by its sales representatives, and NEBS sells products through orders placed by customers directly to NEBS, as a result of advertisements in its catalogues, SAFEGUARD and NEBS market their goods through different channels of trade.

35. There is no evidence of actual customer confusion between NEBS FAST-FORM typing software and SAFE-GUARD's FAST FORM one-write forms.

36. SAFEGUARD's one-write system forms which are designated by the FAST FORM mark are forms which enable accounting and other record keeping procedures to be performed efficiently and in a fast manner. The success of the one-write system depends upon the ability to hold a form in place—in relation to another form —so that when one is being filled out, information will be entered on the other. In other words, the form being held in place must be held fast.

37. At the end of April, 1987, plaintiff first became aware that the defendant, NEBS had begun to advertise and sell typing software under the substantially identical mark FASTFORM. Prior to SAFE-GUARD's discovery in April, 1987, there was no reason why the use by NEBS should have been discovered by SAFE-GUARD.

38. Upon discovery of the use of the trademark FASTFORM by NEBS, counsel for plaintiff on May 1, 1987, wrote to NEBS demanding that NEBS immediately discontinue all use of the trademark FAST-FORM.

39. NEBS chose to ignore the letter and failed to respond to the letter of counsel from SAFEGUARD.

40. At the time that the defendant adopted the mark FASTFORM it had actual knowledge of the plaintiff's use of the mark FAST FORM for business forms for one-write systems and plaintiff's certificate of registration No. 1,301,545.

41. There has been no permitted third party use of either the mark FAST FORM or FASTFORM in connection with business forms.

## DISCUSSION

Although the plaintiff and defendant are competitors as to some of the products they sell, SAFEGUARD's one-write business forms do not compete with NEB's computer software. A purchaser of one could not use it in place of the other.

■ Trademark law gives trademark owners the exclusive use of their marks when some use by another would be likely to cause confusion as to the source of a product. The right to exclude extends only so far as the goods or services are described in the registration certificate. *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396 (3d Cir.1985). If a trademark owner demonstrates the likelihood of confusion between the goods covered by his registration and the goods of another, he is entitled to injunctive relief. To determine the likelihood of confusion between products that do not compete with each other, the court must look beyond the trademark to the nature of the products themselves and the way in which they are sold. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir.1983).

■ The analysis of a number of factors will aid in determining the likelihood of confusion in non-competing products cases. Nine that would be applicable here have been identified in *Interpace:*

1. *The Degree of Similarity Between the Marks.*

Plaintiff's mark, FAST FORM, and defendant's mark, NEBS FASTFORM, share the common appearance and sound of the words "fast" and "form,". However, since defendant always uses NEBS when it uses FASTFORM, the marks though similar, are not identical.

### 2. The Strength of Plaintiff's Mark.

SAFEGUARD's mark is descriptive, that is, the term "FAST FORM" forthwith conveys an immediate idea of the qualities and characteristics of SAFEGUARD's product. That product is a combination of forms, designed to be positioned and held in place as to each other so that data entered on one will be reproduced at an appropriate place quickly and accurately on the other. The system depends upon the forms being kept in the same position, relative to each other, as when originally placed. Thus, the word "FAST" is used in both of its widely accepted meanings: the forms are firmly fixed and designed for quick use.

Because plaintiff's mark is descriptive, it is considered to be weak.

### 3. Factors Indicative of the Care and Attention Expected of a Purchaser.

Defendant's FASTFORM software sells for either $19.95 or $29.95, depending upon whether mathematical totals are calculated by it. The actual forms used with the software sell at a low cost. Thus, the price of NEBS forms, which are not marked with the NEBS FASTFORM logo, and SAFEGUARD's forms, which are marked FAST FORM, will not cause purchasers to exercise great care in making a selection. On the other hand, the purchaser of software would hardly think that he is purchasing a component of a one-write peg board system, nor would he mistake the one for the other. Nonetheless, it cannot be disregarded that a casual purchaser might believe that both products came from a common source. Both are used in the business world, and although they are intended to accomplish different purposes in different ways, they do share the general function of business record keeping.

### 4. Length of Time.

Plaintiff has been marketing its FAST FORM's for approximately five years, during which 60 million of them have been sold. Defendant has been using its mark for approximately one year. There has been no evidence of actual customer confusion between the two products.

Of even greater significance is the fact that plaintiff's mark has not been confused with FASFORM, a mark belonging to AVERY INTERNATIONAL CORPORATION, which uses it in conjunction with computers to make labels, badges, signs, etc. The fact that AVERY's mark is used on computer generated material and is not confused with plaintiff's mark suggests that plaintiff's mark will not be confused with defendant's computer software.

### 5. Defendant's Intent in Adopting the Mark.

When NEBS prepared its summer-fall catalogues for 1986 in which FASTFORM was used for the first time, it was aware of plaintiff's FAST FORM mark and the wording of the registration. Obviously, NEBS' use of FAST FORM was intentional, that is, NEBS acted deliberately and with knowledge.

### 6. The Channels of Trade Through Which the Goods are Marketed.

NEBS sells its products through catalogues, brochures, and direct-mail fliers. There may be telephone and mail followups. NEBS has separate divisions, each of which has its own catalogues, mailings, and phone numbers.

Plaintiff sells through local distributors, that is, salesmen who call upon customers, to explain the advantages of FAST FORM's and demonstrate how the one-write business system works. Plaintiffs also advertise in national publications as well as locally. Thus the parties use different means for the selling of their products.

### 7. The Extent to Which the Targets of the Parties' Sales Efforts Are the Same.

Plaintiffs' FAST FORM's are sold to businesses which conclude a one-write system will be helpful to them or to those businesses which already have a one-write system. Such businesses may or may not buy defendant's software for some other aspect of their operation. For example, someone in the field or a branch office

might use a one-write system to prepare requisitions, record time and material used, and record a job's completion. The same company's headquarters might use FAST-FORM software to send out invoices for such work. The two systems can and do exist independently of each other, but it is possible that both could be used at different levels by the same organization and equally possible that information recorded on a one-write system might be used as a source of an entry on FAST FORM software.

It follows that plaintiff and defendant may aim their efforts at the same target, but there is no particular reason why they should or should not do so.

8. *A Possible Relationship Between the Goods in the Minds of Consumers Because of the Similarity of Function.*

In the broadest sense, there is a similarity of function between the one-write system and NEBS' computer software: both are intended to record business information and conceivably the same information. However, the FAST FORM one-write system operates manually and the FAST-FORM software involves a computer. FAST FORM's can be used practically anywhere; NEBS' software can only be used where there is access to a computer. Moreover, computer software and paper forms are plainly different things, different in size, shape, concept, purpose, appearance, and price.

9. *Facts Suggesting that Consuming Public Might Expect SAFEGUARD to Produce Computer Software.*

There is no reason to suppose that the purchaser of one-write components and FAST FORM's would expect SAFEGUARD to begin the manufacture of computer software. The one is not a natural progression from the other. SAFEGUARD's FAST FORM is a paper product, however sophisticated, and NEBS' FAST FORM, however basic, is used with a computer to generate information and record it on paper.

*Other Considerations*

The possibility of confusion always exists between products whose use, packaging, or names bear marked similarity to each other. Nonetheless, my analysis of the *Interpace* factors strongly suggests there is little likelihood of confusion between NEBS' programs and SAFEGUARD's paper and therefore little chance that consumers will confuse NEBS with SAFEGUARD. While nothing is free of all doubt, I am confident that a prospective purchaser of computer software who is looking at a NEBS catalogue is not going to believe that it originates from the same company whose salesman has sold him one-write business forms in the past. The potential for confusion is especially doubtful for those who have been exposed to NEBS' catalogues which offer NEBS forms for use in a SAFE-GUARD system. Obviously such an ad does not suggest a common source, but a common use for products from different sources, and therefore emphasizes that NEBS and SAFEGUARD are different entities.

There has been no evidence that FAST FORM has acquired any secondary meaning. Although 60 million forms bearing the FAST FORM mark have been sold, FAST FORM is not a mark that has been advertised and promoted as such. There has been no evidence of customer confusion, and the *Interpace* factors suggest confusion is unlikely. Because plaintiff has only a minimal chance to succeed on the merits, its motion for a preliminary injunction must be refused.

I reach the following:

## CONCLUSIONS OF LAW

1. Jurisdiction of this court, which is uncontested, is based upon 28 U.S.C. §§ 1332 and 1338(a), as well as the trademark laws of the United States.

2. Trademark law protects trademark owners by granting to them exclusive use of their marks when a use by another would be likely to cause confusion.

3. Trademark registration is only prima facie evidence of the exclusive right to use

 

the registered mark on the goods specified in the registration.

4. Plaintiff is the owner of the trademark FAST FORM, Trademark Registration No. 1,301,545. This trademark protects goods described as being: "non-self adhesive-type multisheet business forms for use in recording and simultaneously transferring data for specialized market applications and specifically intended to be used as a component in a one-write pegboard accounting system."

5. The trademark FAST FORM is placed on some of the forms sold by plaintiff as components of its one-write business forms systems. These forms are intended to be held securely in place so that dual entries can be quickly made. The forms are held fast so their purpose can be accomplished quickly.

6. The trademark, "FAST FORM," is descriptive because it conveys an immediate idea of the qualities and characteristics of the forms to which it is applied.

7. A merely descriptive mark can achieve trademark protection only if it has secondary meaning. Secondary meaning exists when the trademark is interpreted by the consuming public to be not only a designation of the product, but also a representation of the product's origin.

8. Plaintiff's trademark, FAST FORM, does not have secondary meaning.

9. Plaintiff's mark lacks the strength to warrant protection beyond the specific terms of its registration.

10. NEBS' FASTFORM computer software programs are not non-self adhesive-type multisheet business forms for use in recording and simultaneously transferring data for specialized market applications and specifically intended to be used as a component in a one-write pegboard accounting system.

11. NEBS FASTFORM computer software does not compete with FAST FORM forms sold by SAFEGUARD as components of its one-write business systems.

12. There is little likelihood that consumers will be confused about the origin of NEBS' FASTFORM and believe that it is a product produced by SAFEGUARD.

13. There has been no actual customer confusion concerning the source of SAFEGUARD's FAST FORM and NEBS FASTFORM.

14. Plaintiff has little chance of succeeding on the merits.

15. Plaintiff's motion for a preliminary injunction must be refused.