**CITIZENS FINANCIAL GROUP, INC.,**

v.

**CITIZENS NATIONAL BANK OF EVANS CITY; Citizens Inc; Citizens National Bank of Southern Pennsylvania Citizens National Bank of Evans City and Citizens, Inc., Appellants.**

No. 01–3776.

United States Court of Appeals, Third Circuit.

Argued Jan. 25, 2002.

Filed Feb. 25, 2002.

Timothy P. Ryan (Argued), Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Ray F. Middleman, Malone, Larchuk & Middleman, Wexford, PA, for Appellants.

Paul F. Ware, Jr. (Argued), Goodwin Procter, Boston, MA, Patrick R. Kingsley, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Appellee.

Before NYGAARD and STAPLETON, Circuit Judges, and SLEET, District Judge.

MEMORANDUM OPINION
OF THE COURT

NYGAARD, Circuit Judge.

Citizens National Bank of Evans City and Citizens, Inc. ("CNBEC") appeal from the District Court's denial of their request for a preliminary injunction enjoining Citizens Financial Group, Inc. ("CFG") from using any name or mark incorporating the word "CITIZENS" in four counties in Western Pennsylvania. CNBEC raises numerous issues on appeal, each of which challenges the District Court's determination that CNBEC was unlikely to prevail on the merits of its infringement claims and unfair competition. It asks us to reverse this determination, and conclude that a preliminary injunction would have been appropriate. We will affirm.

I.

Because we write solely for the parties, and they are as familiar with the facts as is the court, we need not set forth a detailed recitation of them and will limit our discussion to those necessary to a resolution of the issues presented on appeal.

CNBEC began operations in 1893 and adopted the name "Citizens National Bank of Evans City" in 1907. It currently has 16 branches in three counties in Western Pennsylvania. CFG began operations in 1871 and currently has 300 branches along the east coast. In 2001, CFG acquired in excess of 300 branches formerly owned by Mellon Bank, some of which are located in Pennsylvania. CFG planned to rename its new Pennsylvania branches "Citizens Bank of Pennsylvania."

In response to this plan, CNBEC sent a "cease and desist" letter to CFG requesting that CFG not use any name that included the word "CITIZENS" in reference to its Western Pennsylvania banks. CFG responded to this letter by filing suit in the

Western District of Pennsylvania seeking a declaratory judgment that CNBEC could not prevent it from using the word "CITIZENS." CNBEC's answer to CFG's complaint contained affirmative defenses and a counterclaim alleging trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). CNBEC then filed a motion for preliminary injunction.

## II.

"[T]he ultimate decision to grant or deny the preliminary injunction is reviewed for 'abuse of discretion.'" *Brian B. ex rel Lois B. v. Pennsylvania Dept. of Educ.,* 230 F.3d 582, 585 (3d Cir.2000). "Unless the trial court abuses [its] discretion, commits an obvious error in applying the law or makes a serious mistake in considering the proof, the appellate court must take the judgment of the trial court as presumptively correct." *Cont'l Group, Inc. v. Amoco Chems. Corp.,* 614 F.2d 351, 357 (3d Cir.1980) (quoting *A.O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir.1976)).

To prevail on a request for preliminary injunction, the moving party must establish that: (1) its is likely to succeed on the merits of its underlying claim; (2) it will be irreparably harmed without the injunction; (3) the irreparable harm to itself outweighs the harm to the non-moving party; and; (4) the public interest will be served by the granting of the injunction. *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 191–92 (3d Cir.1990).

Section 43(a) of the Lanham Act prohibits the use of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a). In determining the amount of protection, if any, a given mark receives, courts engage in a two-part inquiry. Courts first classify the mark along a distinctiveness spectrum, then analyze the mark's "commercial strength." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 221 (3d. Cir. 2000). Under the first part of the test, marks are classified along a scale beginning with generic (which receives no protection), through descriptive (which requires proof that the mark has acquired "second meaning"), on to suggestive (which implies something about the product or service), and then arbitrary or fanciful (which receives the most protection). *Checkpoint Sys., Inc. v. Check Point Software Techs.,* 269 F.3d 270, 282 (3d Cir. 2001). The District Court found the term "CITIZENS" to be suggestive, but nonetheless found that "the mark is inherently weak, regardless of its categorization as a descriptive or suggestive mark" and thus not to warrant protection.

After finding that "CITIZENS" was not a valid and protectable mark for trademark purposes, the District Court engaged in the second prong of Lanham Act analysis: whether CFG's use of "CITIZENS" would likely result in confusion. A determination of the likelihood of confusion of marks requires the balancing of ten factors set out in *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1228–9 (3d Cir. 1978); *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir.1983). In applying these *Lapp* factors, the District Court found, among other things, that: 1) the strength of the word "CITIZENS" as a mark is very weak; 2) although sharing the word "CITIZENS," the marks of CNBEC and CFG are not very similar; 3) there was no evidence that CFG intended to cause confusion by using "CITIZENS," and; 4) the evidence of actual confusion

offered by CNBEC was not significant in light of the volume of CNBEC's business. Considering these facts, the court concluded that the majority of the *Lapp* factors favored CFG and therefore that CNBEC had not established a likelihood of confusion. Thus, the District Court concluded that CNBEC was unlikely to succeed on the merits of its Lanham Act claim and denied its request for a preliminary injunction.

■ The District Court appears to be of the view that, although CNBEC has shown its mark to be suggestive, it is entitled to no protection because CNBEC has failed to prove its mark has acquired secondary meaning. To the extent the District Court so concluded, we agree with CNBEC that it committed an error of law. We have pointed out that a suggestive mark is entitled to protection without proof of secondary meaning. *A & H Sportswear*, 237 F.3d at 222. The error is harmless, however, because it is apparent that the District Court would have permissibly denied a preliminary injunction in any event because of an absence of a showing of likelihood of confusion. With respect to the District Court's analysis of the likelihood of confusion issue, we see no error in the court's findings of fact, nor any abuse of discretion in its conclusions. In particular, we note our agreement with the District Court that it is permissible to distinguish marks on the basis of portions of the mark that are generic. See *A & H Sportswear*, 237 F.3d at 218.

## CONCLUSION

In summary, the District Court's denial of CNBEC's request for a preliminary injunction on the grounds that it was unlikely to succeed on the merits of its Lanham Act claim was fully supported by properly found facts, and its conclusions were well

within its considerable discretion. We will affirm.