

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2009

# PB Brands LLC v. Patel Shah Indian Gr

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"PB Brands LLC v. Patel Shah Indian Gr" (2009). *2009 Decisions.* Paper 1203.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1203

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-3205

_____

PB BRANDS, LLC,
d/b/a PATEL BROTHERS

v.

PATEL SHAH INDIAN GROCERY

PB Brands, LLC,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-07-cv-04394)
District Judge: Honorable Joseph A. Greenaway

_____

Argued May 22, 2009
_____

Before: RENDELL, STAPLETON, and ALARCÓN[*], Circuit Judges

(Filed: June 10, 2009)
_____

_____

[*] Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for
the Ninth Circuit, sitting by designation.

Vanessa R. Elliot     **[ARGUED]**
Beattie Padovano, LLC
50 Chestnut Ridge Road
Montvale, NJ 07645
  *Counsel for Appellee*

Charles Quinn        **[ARGUED]**
Graham Curtin, P.A.
P.O. Box 1991
Morristown, NJ 07962-1991
  *Counsel for Appellant*

———

OPINION OF THE COURT

———

ALARCÓN, <u>Circuit Judge</u>.

PB Brands, LLC ("PB Brands") appeals the District Court's order denying its motion for a preliminary injunction. PB Brands sought to enjoin Patel Shah Indian Groceries ("PSIG")[1] from using the name Patel, or any similar name, in commerce. The District Court held that PB Brands failed to establish that a likelihood of confusion existed between PB Brands' service marks and PSIG's business name. We affirm.

**I**

Established in 1974, PB Brands is a family business that today claims to be "the

---

[1]  In the complaint, PB Brands named PSIG as "Patel Shah Indian Grocery." This is also the name used and analyzed by the District Court. The record shows, however, that the last word of PSIG's business name is "Groceries," not "Grocery."

largest grocer of Indian food products in the United States." PB Brands owns a chain of thirty-two Indian grocery stores in sixteen states that are operated by either PB Brands or a PB Brands' licensee. The stores operate under the names Patel Brothers, Patel's Cash & Carry, Patel Brothers Cash & Carry, or Patel Foods. PB Brands also owns the three service mark registrations—Patel Brothers (registered January 17, 1995), Patel's Cash & Carry (registered March 11, 1997), and Patel Brothers Cash & Carry (registered May 24, 2005).

In 2007, Bhavesh Patel—who is not affiliated with PB Brands—planned to open an Indian grocery store in Fairfield, New Jersey which is located in Essex County. Bhavesh Patel named his store Patel Shah Indian Groceries. "Patel Shah" is a combination of Bhavesh Patel's surname and his wife's maiden name, Shah. Before PSIG held its grand opening sale, PB Brands became aware of the name of PSIG's store.[2] PB Brands wrote to PSIG, informed it of PB Brands' registered marks, and demanded that PSIG remove the name Patel from its store name and advertising. PB Brands claimed that PSIG was infringing on PB Brands' federal trademarks and service marks and that PB Brands would initiate legal action if PSIG did not change its business name. PSIG chose not to change its name and held a grand opening of its store on September 13,

---

[2] It is unclear how PB Brands became aware of PSIG. PSIG contends that it placed a wholesale order with PB Brands and the purchase order identified PSIG. At oral argument, however, PB Brands stated that it engaged in retail, and not wholesale sales.

3

2007. PB Brands filed suit the same day alleging trademark infringement and unfair

competition, violations of Lanham Act, 15 U.S.C. §§ 1114,[3] 1125.[4]

---

[3] The relevant portion of this statute provides:

> (1) Any person who shall, without the consent of the registrant --
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1) (2005).

[4] The relevant portion of this statute provides:

(continued...)

Two weeks later, on September 28, 2007, PB Brands filed a motion for a preliminary injunction seeking to enjoin PSIG from its alleged service mark infringement and unfair competition. PSIG opposed this motion on October 16, 2007. PB Brands filed a reply on October 25, 2007. On November 29, 2007, the District Court held a hearing on the motion. The District Court denied the motion on June 27, 2008. PB Brands filed a timely appeal.

The District Court had original jurisdiction under 15 U.S.C. § 1121(a) and 28

---

[4] (...continued)
    (a) Civil action

    (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (2006).

U.S.C. § 1338.  We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## II

PB Brands contends that the District Court improperly applied and weighted the factors set forth in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983), to reach its conclusion that PB Brands' marks and PSIG's business name were not confusingly similar.  We review "the denial of a preliminary injunction for 'an abuse of discretion, an error of law, or a clear mistake in the consideration of proof.'"  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).

## III

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).  The first element—whether PB Brands established a likelihood of success on the merits—is the issue before this Court.

A plaintiff can successfully establish a trademark claim if it proves:

> Generally, to win a trademark claim, a plaintiff must establish
> that (1) the marks are valid and legally protectable; (2) the
> marks are owned by the plaintiff; and (3) the defendant's use

6

> of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services.

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

"If the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved." *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 n.7 (3d Cir. 1994). PB Brands submitted an affidavit declaring federal registration and showing incontestability of the service marks "Patel Brothers" and "Patel's Cash & Carry." Therefore, with respect to those marks, PB Brands has demonstrated validity, legal protectability, and ownership. Those requirements are undisputed, and thus the first two elements of trademark infringement are satisfied.

Because the first two elements are satisfied, we must decide whether PB Brands demonstrated that there is a likelihood of confusion between its marks and PSIG's business name in order to succeed on the merits of its request for a preliminary injunction. "Once a trademark owner demonstrates likelihood of confusion, it is entitled to injunctive

7

relief." *Lapp*, 721 F.2d at 462. Likelihood of confusion exists when "consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978). This is evaluated "from the perspective of ordinary consumers, not from the perspective of people in the trade." *Fisons*, 30 F.3d at 476. This Court considers ten factors to determine whether a likelihood of confusion exists:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Lapp*, 721 F.2d at 463 (citing *Scott*, 589 F.2d at 1229).

Although no fact is "determinative . . . and each factor must be weighed and balanced against one against the other," *Checkpoint Sys., Inc. v. Check Point Software*

8

*Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001), when the marks directly compete "[t]he single most important factor in determining likelihood of confusion is mark similarity." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000). In this appeal, PB Brands challenges the District Court's conclusions of the first, second, third, seventh, eighth, ninth, and tenth *Lapp* factors.

The record shows that the District Court correctly analyzed the fourth, fifth, and sixth factors. No evidence supported either party with regard to the fourth or sixth factors—the length of time PSIG had used the mark and evidence of customer's actual confusion—as this action was filed the day PSIG held its grand opening sale. Thus, these factors were neutral. The fifth factor, intent, weighed in favor of PSIG. PSIG chose the name based on a combination of the owner and his wife's surnames, and PB Brands presented no evidence that PSIG intended to confuse or deceive the public. *See Checkpoint*, 269 F.3d at 286 (noting that "a party's intentional use of another party's mark to cause confusion" weighs in favor of finding likelihood of confusion).

## A

The first *Lapp* factor is the degree of similarity between PB Brands' marks and PSIG's allegedly infringing mark. This is a comparison between "Patel Brothers" or "Patel Cash & Carry" and "Patel Shah Indian Groceries."

"[T]the overarching question is whether the marks, '*viewed in their entirety*,' are

9

confusingly similar." *Kos*, 369 F.3d at 714 (citing *A & H*, 237 F.3d at 216).  To

determine the similarity of the mark, a court must decide "'whether the labels create the

same overall impression when viewed separately.'" *Fisons*, 30 F.3d at 477-78 (citations

omitted).  To make this determination, courts "compare the appearance, sound and

meaning of the marks." *Checkpoint*, 269 F.3d at 281.  Additionally, a court may consider

the linguistic similarities of words in its evaluation of a trademark.  *Kos*, 369 F.3d at 713

(comparing Advicor and Altocor, "seven-letter three syllable words that begin and end

with the same letters and the same sounds").

In *A & H*, for example, this Court approved the district court's analysis of the sight

and sound of two marks.  237 F.3d at 217-18.  It analyzed the similarity between the

plaintiff's mark MIRACLESUIT and the defendant-competitor's mark THE MIRACLE

BRA.  *Id.* at 206.  The district court "noted that although they share the term MIRACLE,

there are different numbers of syllables, and the last syllable of each is different.

Moreover, Miraclesuit bleeds two words together while The Miracle Bra consists of three

discrete words. In short, the District Court concluded that the two marks sound different."

*Id.* at 217.  This Court also approved the court's analysis of the look and meaning of the

marks, including the consideration of the generic words "the" and "bra" and "suit." *Id.* at

217-18.

Likewise, here, the District Court considered the marks in their entirety and

10

correctly concluded that the first factor favored PSIG because the marks did not look or sound alike. *See PB Brands, LLC v. Patel Shah Indian Grocery*, No. 07-4394, 2008 WL 2622846, at \*4-6 (D.N.J. June 27, 2008). In this case, like *A & H*, the non-common words distinguish the marks. The names Patel Brothers, Patel Cash & Carry, and Patel Shah Indian Groceries differ in sight, sound, and length. Moreover, each name contains a different number of words and syllables, and all three names end with different sounds. Further, the strongest sound in Patel Brothers is "Brothers" distinguishing it from Patel Shah. Additionally, the word "Brothers" indicates a fraternal, sibling relationship. The name Patel Shah Indian Groceries is gender neutral and connotes different antecedents. Finally, each name differs in the generic terms it uses—"Brothers," "Cash & Carry," and "Indian Groceries." Accordingly, the District Court did not clearly err in finding that, when considered in their entirety, the sight and sound of the marks differed and that the marks were neither confusingly similar nor likely to be confused in the mind of a roving consumer. Thus, this most important factor weighs in PSIG's favor.[5]

---

[5] While we hold that the District Court correctly found the marks dissimilar in rejecting the motion for a preliminary injunction, we also conclude, however, that the District Court improperly relied on two forms of evidence in conducting its analysis of the first factor. First, because "Patel" is the second most common Indian surname in India, the District Court reasoned that the frequent use of the name would cause consumers to distinguish the marks. *PB Brands*, 2008 WL 2622846, at \*4-5. The District Court should have considered the commonality of names in its analysis of the strength of the mark—the second *Lapp* factor—not the similarity of the mark. *A & H*,

(continued...)

11

**B**

The next factor is the strength of the PB Brands' marks. The strength of an owner's mark is "determined by (1) the distinctiveness or conceptual strength of the mark and (2) its commercial strength or marketplace recognition." *Checkpoint*, 269 F.3d at 282. The District Court calculated this factor as neutral by reasoning that while PB Brands' marks were not distinctive, its advertising and length of business operations resulted in market strength.

"Although the wide use of a term within the market at issue is more probative than the wide use of a term in other markets, the extensive use of the term in other markets may also have a weakening effect on the strength of the mark." *A & H*, 237 F.3d at 223. Moreover, "as a general rule, widespread use of even a distinctive mark may weaken the mark." *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 123 (3d Cir. 2004).

---

[5] (...continued) 237 F.3d at 223 ("Although the wide use of a term within the market at issue is more probative than the wide use of a term in other markets, the extensive use of the term in other markets may also have a weakening effect on the strength of the mark.") (citation omitted). Second, the District Court considered a disclaimer in PSIG's advertising that read "[PSIG] is not affiliated with Patel Brothers." *PB Brands*, 2008 WL 2622846, at *5. PSIG's counsel introduced the disclaimer for the first time at oral argument. PB Brands did not have an opportunity to review the disclaimer prior to the hearing or present any argument regarding its effect. Accordingly, the District Court erred in considering the disclaimer in its evaluation of the *Lapp* factors.

The District Court correctly considered that well over 100 businesses in New Jersey use the surname Patel as the first name of their business. This fact weakens PB Brands' claim that its mark is distinctive. As the District Court explained, the prevalence of the use of the term Patel in business names necessitates that "consumers . . . exercise care and look to the remaining words in the business name in making purchasing decisions." *PB Brands*, 2008 WL 2622846, at *7; *see Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.*, 308 F.2d 196, 199 n.2 (2d Cir. 1962) ("The mark 'Triumph' is a so-called weak mark, i.e. it has been used many times to identify many types of products and services."). Furthermore, the evidence shows that Patel is the second most common Indian surname. This fact supports the District Court's determination that the second *Lapp* factor does not fall in favor of PB Brands. *Scott*, 589 F.2d at 1231 ("Selection of a mark with a common surname naturally entails a risk of some uncertainty and the law will not assure absolute protection.").

The District Court next weighed the marks' weakness against the commercial strength or marketplace recognition of PB Brands' marks. "Although evidence of money spent does not automatically translate into consumer recognition, it is clearly relevant, and hence the District Court's methodology and conclusion does not appear to be in error or to involve a misapplication of the law." *A & H*, 237 F.3d at 224. Likewise, here, the District Court considered that PB Brands advertises on a national and local basis,

13

spending approximately $50,000 per month and additional undisclosed amounts by individual stores in local markets.

The District Court properly balanced the countervailing considerations—the frequent use of the Patel name as a business identifier and PB Brands' expenditures on advertising—to reach the conclusion that the second factor was neutral.

## C

We next consider the "price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase." *Lapp*, 721 F.2d at 463. "When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion." *Checkpoint*, 269 F.3d at 284. Thus, "[t]he greater the care and attention, the less the likelihood of confusion." *Fisons*, 30 F.3d at 476 n.12. "Inexpensive goods require consumers to exercise less care in their selection than expensive ones. The more important the use of the product, the more care that must be exercised in its selection." *Versa Prods. Co. v. Bifold Co. (Mfg.)*, 50 F.3d 189, 204 (3d Cir. 1995).

PB Brands unsuccessfully argued to the District Court that customers exercised a low degree of care in selecting an Indian grocery store because the individual items sold at the stores cost little. *PB Brands*, 2008 WL 2622846, at *8. In this appeal, PB Brands

14

makes the same argument.[6] The District Court correctly determined that this factor was

neutral because "[n]either party provided sufficient evidence to elucidate" the degree of

care consumers spend on choosing an Indian grocery store.[7] *Id.* Given the lack of

evidence presented to the District Court, we agree that this factor could not weigh in favor

of either PB Brands or PSIG.

**D**

Next, we consider whether PB Brands' and PSIG's goods are marketed through

the same channels of trade and advertised through the same media. "Courts have

recognized that 'the greater the similarity in advertising and marketing campaigns, the

---

[6] PB Brands' argument fails to address the question regarding the degree of care that consumers exercise in choosing where to shop. Instead, PB Brands addresses the degree of care consumers use in purchasing individual items after they have chosen where to shop. *See*, e.g., 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:95 (4th ed. 2003) ("[p]urchasers of relatively inexpensive goods such as ordinary *grocery store foods* are held to a lesser standard of purchasing care." ); *Gray v. Meijer, Inc.*, 295 F.3d 641, 649 (6th Cir. 2002) (snack foods); *Starbucks Coffee Co. v. Marshall S. Ruben*, 78 U.S.P.Q.2d 1741, 1752 (T.T.A.B. 2006) (coffee)*; Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 672 (Fed. Cir. 1984) (tea); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1567 (Fed. Cir. 1984) (bread and cheese).

[7] We agree with PB Brands that the District Court erred in finding that "households in the New York metropolitan area spend[] 13.5% of [their] income on groceries." *PB Brands*, 2008 WL 2622846, at *8. The evidence shows that households actually spend only 7.4% of their income on groceries and spend the remaining 6.1% on food prepared away from home, such as at restaurants, for carry out, etc. Nevertheless, the error was harmless because the court did not rely on this evidence to reach its conclusion that factor three was neutral. *See id.*

15

greater the likelihood of confusion.'" *Checkpoint*, 269 F.3d at 288-89 (citing *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 502 (D. Del. 1998)). "This is a fact intensive inquiry" that requires courts to "examine the trade exhibitions, publications and other media the parties use in marketing their products as well as the manner in which the parties use their sales force to sell their products to consumers." *Id.*

The evidence shows that PB Brands advertises nationally using various forms of media, including television, radio, newspapers, magazines, and trade publications. *PB Brands*, 2008 WL 2622846, at *10. In addition, PB Brands prints flyers, brochures, and calendars. *Id.* Conversely, PSIG advertises to the local Fairfield, New Jersey community solely through the use of flyers. *Id.* The District Court correctly considered this evidence. It did not abuse its discretion by concluding that PB Brands and PSIG did not market their goods through he same channels of trade or advertise in the same media.

**E**

The District Court held that factor eight, the targets of the parties' sales efforts, fell in PB Brands' favor because both parties target the same group of consumers and, though PB Brands did not have stores in Essex County, consumers could be exposed to its advertising. "[W]hen parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion." *Checkpoint*, 269 F.3d at 289 (citing *Lapp*, 721 F.2d at 463-64). Although this factor should have weighed entirely in PB Brands' favor, the

16

District Court discounted its weight for two reasons. First, the court reasoned that the sight and sound of the marks differed. *PB Brands*, 2008 WL 2622846, at \*11. Second, it considered PSIG's use of the disclaimer. *Id.* As explained above, the District Court should not have considered PSIG's disclaimer. Any error caused by this improper consideration, however, was harmless. Even if factor eight weighed entirely in favor of PB Brands, the overall balance of the *Lapp* factors would not change.

## F

PB Brands contends that although the District Court concluded factor nine fell in its favor, the court should have given it more weight. PB Brands cites no authority for its proposition that factor nine should be accorded a greater degree of weight than applied by the District Court. The District Court analyzed "'whether the goods are similar enough that a consumer would assume they were offered by the same source.'" *PB Brands*, 2008 WL 2622846, at \*11 (citing *Checkpoint*, 269 F.3d at 386). The court concluded, "[PB Brands] argues that the use of the marks is identical; namely, the marks are being used to market Indian groceries. This Court agrees. . . . This factor weighs in favor of [PB Brands.]" *Id.* The degree of weight given to this factor by the District Court was not clearly erroneous.

## G

17

The last factor asks whether "other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." *Lapp*, 721 F.2d at 463. As explained in *Checkpoint*:

> When it appears *extremely* likely . . . that the trademark owner will soon enter the defendant's field, this . . . factor weighs heavily in favor of injunctive relief. Under this factor we look not only to evidence that a plaintiff has actually moved into the defendant's market, but also to other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that it is likely to expand into that market.

269 F.3d at 290 (quoting *Lapp*, 721 F.2d at 463) (internal quotations and citation omitted) (emphasis added).

The District Court held that this factor weighed in favor of PSIG because PB Brands did not operate any stores in Essex County, where PSIG is located, and because it did not present any evidence that it intended to expand into Essex County. PB Brands claims that the specific geographical area is irrelevant because its advertising reaches the regional area. This argument does not challenge the basis for the District Court's decision: no evidence exists indicating that PB Brands plans to expand into PSIG's market area. Accordingly, the District Court did not abuse its discretion by weighing this factor in PSIG's favor.

18

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the District Court.